SAMUEL SNOWDEN, and CLYMER WHYTE, Adminis-
trators of JOHN PATTERSON vs. CHARLES D. REID.

*Loan—Gift—Debt.*

P. drew his check for $3800 in favor of R. and delivered it to him.
P. at the time the check was drawn, made this memorandum on
the stub in his check book: "No. 4274, 1st Oct., 1884, Charles D.
Reid, loaned $3800." There was also entered on the stub a credit
to R. of about $1600, his share of the profits left after what he had
drawn for that year. P. and R. were partners in business. All
checks were drawn by P., and he used the same check book for
those drawn on his private account, and those on the business of
the firm. R. purchased a house out of the money realized from the
check, and received a deed for it and occupied it as a dwelling for
his family. R. was living in the county, and it was much more
convenient both to him and P., that he should reside in the city.
In discussing the matter together, P. said to R., "get a house, and
I will give you the money." On occasions subsequent to the pur-
chase of the house, P., in referring to the matter, stated that he
had furnished the money to pay for a house for R., and that he
would never claim it back from him; and that he had to give the
money to him; that there was no use in lending it. On other occa-
sions he spoke of the money as loaned; and in January, 1886, in
making out a schedule of his investments, and money due him, he
included the sum of $2400 principal, and $100 interest, as a debt
due by R. HELD:

That the transaction was not a gift of money to R., but a loan, and
R. was liable to the estate of P. for the amount, less the credit
thereon.

APPEAL from the Circuit Court for Baltimore County, in
Equity.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., STONE, MIL-
LER, ROBINSON, IRVING, and BRYAN, J.

*Samuel Snowden,* and *Wm. Pinkney Whyte,* for the appellants.

*James Pollard,* and *H. W. Latane,* for the appellee.

BRYAN, J., delivered the opinion of the Court.

John Patterson drew his check for thirty-eight hundred dollars in favor of Charles D. Reid, and delivered it to him. The question in this controversy is whether the transaction was a gift or a loan of money.

The evidence shows that in his check-book on the stub of the check, Patterson made at the time it was drawn this memorandum: "No. 4274, 1st Oct., 1884, Charles D. Reid, loaned $3,800." Patterson and Reid were partners doing business in the City of Baltimore under the name of John Patterson. All checks were drawn by Patterson alone, and he used the same check-book for those drawn on his private account, and those on the business of the firm. Reid stated in his testimony as follows: "There was a credit there to me of about sixteen hundred dollars, which was my share of the profits left after what I had drawn for that year." We suppose that he means that this credit was entered on the stub of the check. There was a good deal of evidence tending to show that Patterson intended to make a gift of this money to Reid. The latter person was living in Baltimore County, and it was much more convenient both to him and Patterson, that he should reside in the city. In discussing the matter together, Patterson said to him, "get a house, and I will give you the money." The house was bought with the money drawn on the check, and Reid received the deed and occupied it as a dwelling for his family. On occasions subsequent to the purchase of the house, Patterson, in referring to the matter stated, "that he had furnished the money to pay for a house for Charlie, (meaning Reid,) and that he never would claim it back from him," and

that "he had to give the money to him" and "that there was no use in lending it." On other occasions he spoke of the money as loaned, and said it would be a long time before "Charlie could save enough up to pay him what he owed him." In January, 1886, in making out a schedule of his investments and of money due him, he included this sum of money, entering it as a debt due by Reid.

It is clear that he did not make a gift of this money at the time he drew the check, because he made a memorandum at the time stating that it was a loan; and when he applied towards the payment of it, sixteen hundred dollars of the amount coming to Reid as his share of the profits of the partnership business, Reid must have ascertained that it was not a gift, whatever his belief might have been before that time. We think that the fair inference from all the testimony is, that Patterson for a considerable time had the purpose (more or less definite) of making a present of this money to Reid. But an intention to make a gift, or even a solemn promise to do so, is not sufficient to pass the title to personal property. It is perfectly well settled that there must be an actual delivery of the thing, if in its nature, it is capable of manual delivery. In all other cases, there must be an act which the law considers equivalent to a delivery; that is to say, the donor must part with the dominion and control of the subject-matter, and transfer it to the donee. In the present case at the inception of this transaction, there was a loan of money to Reid, and he became indebted to Patterson. As a debt cannot be delivered from one hand to another, the law has provided that it must be assigned in writing, and where the debt is to be transferred from the creditor to the debtor, the liability must be extinguished by a release or some instrument of an equivalent character. In *Hooper vs. Goodwin*, 1 *Swanston*, 485, the Master of the Rolls said: "A gift at law, or in equity, supposes

some act to pass the property: in donations *inter vivos,* if the subject is capable of it, a delivery: if a *chose in action,* a release, or equivalent instrument; in either case, a transfer of the property is required.—An intention to give, is not a gift. * * * * * * The evidence establishes only a clear intention to relinquish; the testator meant to do a further act, he was preparing to do it; it was not done; the Court cannot supply it. The gift is inchoate and imperfect; not such as can be pleaded at law, or opposed in equity as a bar to a bill for an account by a legatee against the personal representative." In the case just mentioned, Robert Goodwin having died intestate, his widow became entitled to one-half of his personalty, a surviving brother, Henry, to one-fourth, and certain nephews and nieces to the other fourth. Henry wrote a letter to the widow (who was also administratrix) expressing regret that his brother had not made a will, and stating that he should relinquish his share of the estate to her. He actually executed a release of certain bank stock for her benefit, and he caused his solicitor to prepare a release to her of all his interest in the general personal estate, but was prevented by death from executing it, although he continued fixed and steadfast in his purpose, down to the last hour of his life. The decision of the Court nevertheless, was that the widow, as administratrix, was obliged to account to his representatives for his share of the general personal estate. In *Picot, Administrator, &c. vs. Sanderson,* 1 *Devereux,* (*N. C.,*) 309, the plaintiff's intestate held the bond of the defendant, and he placed it in the hands of an agent for collection. Afterwards he, voluntarily and without consideration, drew an order on his agent directing him to deliver up the bond to the defendant. The agent did not obey this direction, but after the obligee's death, delivered it to his administrator, who brought suit on it. It was held that without a delivery of the bond, the order for its delivery was a

mere contract or agreement to give, which being without consideration could not be enforced ; and. that the action was properly maintainable. It has been repeatedly held by this Court that where a gift is imperfect by the omission of some act or circumstance which the law requires as necessary to pass the title, it cannot be made good in equity. *Baltimore Retort, &c. Company vs. Mali,* 65 *Maryland,* 93. To give legal effect to a gift of this debt, there must be some relinquishment of it in writing. If this be not shown, no promises of the creditor to give the money, or statements that he had given, or intended to give it, would be of any avail. The vacillating nature of any intentions formed by Patterson is shown by the fact that a few months before his death, he included among his assets this sum of money as due to him by Reid.

Conway W. Sams and Charles D. Reid were appointed administrators of Patterson. and the bill in this case was filed by Sams against Reid. The Circuit Court dismissed the bill on the ground·that the fact of the loan was estab-- lished. After this decree was passed the letters of Sams and Reid were revoked, and Samuel Snowden and Clymer Whyte were appointed in their stead. On the petition of the new administrators they were substituted as complainants, and the cause was reheard in the Circuit Court; but the Court adhered to its former decision. The facts alleged in the bill do not show any lien on the property purchased with the money obtained from Patterson, nor any interest therein. It is stated that the money was furnished by Patterson for the purpose of purchasing a leasehold lot of ground, and that the deed was taken in the name of Reid. It is not alleged that it was furnished by Patterson to be used as his own funds, and for his own benefit, for the purpose of securing to himself the ownership of the property. If it was paid for by Patterson with his own money, and the legal title was taken in the name of Reid, there was a. resulting trust in Patterson's favor. But if the money

Snowden and Whyte, Adm'rs *vs.* Reid.

was furnished by Patterson as a loan to Reid, it was Reid's money, and he was a debtor to Patterson for the amount. The bare allegation that the money was furnished is very vague and indefinite. Consistently with its terms the money might be a loan, or a gift, or a bailment for Patterson's benefit. We do not intend to discuss the question whether the bill presents a case within the jurisdiction of equity; because as no objections to the jurisdiction were taken in the Court below, the twenty-seventh section of Article 5, of the Code, excludes the question in this Court. But we do not wish it to be understood that we express an opinion in favor of the jurisdiction. The statute requires us to decree on the case made in the bill, and we deem it unnecessary to say anything more on the subject.

Our conclusion is, that Reid is indebted to Patterson's administrators in the sum of twenty-two hundred dollars, with interest from the first day of October, 1884; but as the statement made in January, 1886, by Patterson, puts the interest at a hundred dollars a year, no greater rate must be charged after that time. The decree below will be reversed, and a decree will be entered in favor of the appellants for the sum thus ascertained to be due.

> *Decree reversed, and*
> *decree for appellants*
> *for twenty-four hundred*
> *and eighty-five dollars.*

(Decided 16th March, 1887.)


Judges ROBINSON and IRVING dissented.


On the 2nd of April, 1887, a motion was made by the appellee for a rehearing of the case, and various reasons were assigned in support of the motion. The motion was overruled.

BRYAN, J., delivered the following opinion on the motion for a re-argument:

In *Reeves vs. Brymer,* 6 *Vesey, Jr.,* 517, Sir WILLIAM GRANT found it necessary to consider the effect of parol declarations in extinguishment of a bond, and he used this language: "I should not have been sorry to have found any specific ground, upon which I could have exempted this poor old man (the obligor) from this charge; for there is every reason to suppose, it was not the intention of the testator to exact it; and the defendant had from the lapse of time, and what passed between him and the testator no reason to believe he did intend it." And further on, speaking of what was alleged to have taken place between the testator and the defendant, he says: "This is nothing more than that he (the testator) never meant to demand payment. He says, he had given him the £400 he owed him on his bond; that he might make what use he pleased of it; and he never meant to require payment, &c. All that is nothing more than a declaration by the testator, that he never would sue for this money; which certainly is not sufficient to operate as a release; though if declarations of this kind *are put in writing, if by a testamentary paper,* it might operate as a gift to him of the money due upon the bond." In *Jones vs. Ricketts,* 7 *Md.,* 116, a debtor paid the creditor a sum less than the amount due, and the creditor executed and delivered to him a *receipt in full* of the claim. This Court stated it as the unquestioned law of this State, "that the payment of a less sum of money than the whole debt without a *release* is no satisfaction of the plaintiff's claim." And this doctrine has always been held whenever the question has come before this Court. *Campbell vs. Booth,* 8 *Md.,* 116; *Booth vs. Campbell,* 15 *Md.,* 569, and other cases. It is impossible to maintain that a debt may be relinquished by parol without consideration; when it cannot be done by receipt in writing expressed to be in full,

and accompanied by the payment of a sum of money less than the amount due. *Jones vs. Ricketts* decided that a creditor could not forgive a part of the debt without a release ; how then can he forgive the whole?

The decision in *Linthicum vs. Linthicum*, 2 *Md. Ch. Dec.*, 21, is not at this time before us for review. The learned Chancellor in his opinion distinguishes the case "from a bond given upon an actual loan of money, between persons standing in the relation of strangers to each other," and says, it is a case where "the parties are father and son, and the transaction with which the note in question is connected, seems to have been a family arrangement entered into for the benefit of the son." *Page* 23. It is not probable that he meant to authorize inferences which are in conflict with the general current of the authorities. The cases to which he refers, and many others on the same subject, were examined with great learning and acuteness in *Irwin vs. Johnson,* 36 *New Jersey Equity Reports,* 347 ; and it was there shown in a very clear and satisfactory manner that according to the well established doctrine of Courts of equity, " voluntary declarations by a creditor of an intention to release a debt, unless accompanied by some act which amounts to a release at law will not operate as an equitable release." It was also held that, " At law a parol declaration of the kind would have no efficiency at all. A debt cannot be extinguished by a mere statement by the creditor that he does not intend to enforce it; or that he forgives it; or even by a receipt for the whole, when in fact, a part only has been paid."

(Decided 23rd June, 1887.)

MILLER, J., filed the following opinion, in which ALVEY, C. J., concurred :

In assenting to the reversal of the decree in this case and to the overruling of the motion for a re-argument, I

do so solely upon the ground that I do not regard the evidence as sufficient to establish a gift of the money in question by Patterson to Reid, and not upon the ground that a *creditor cannot* make a gift to his *debtor* of the debt due to him by the latter, except by a delivery up of the note or other instrument evidencing the debt, or by an assignment or release in writing of the debt itself.

In the case of *Linthicum vs. Linthicum,* 2 *Md. Ch. Dec.,* 21, a bill was filed by the obligor in a *sealed* note, against the executor of the obligee into whose possession the note came after the death of the obligee, and the Chancellor decreed the note to be *cancelled* upon proof that the testator did not intend to exact payment of the money due upon it, but originally intended it as a gift, or afterwards treated it as such and abandoned it as a debt, although such proof consisted entirely of the *parol declarations* of the testator unaccompanied by any other statements or papers of any description, and notwithstanding he retained possession of the note until his death. In support of his decree the Chancellor cites a number of English decisions which have been followed in this country in many cases, and which have been referred to with apparent approval by Judge STORY in 2 *Story's Eq.,* sec. 706 *a.* He carefully distinguishes, (and in this the authorities he cites fully sustain him) such a transaction between *creditor and debtor,* where the intention of the creditor is clearly indicated by *such proof* and the surrounding circumstances, that the debt should be *forgiven* and released to the debtor himself, from the ordinary case of a gift *inter vivos* or *mortis causa* where there must be an actual delivery, according to the manner in which the particular thing, the subject of the gift, is capable of being delivered, and if such delivery is wanting, the gift is invalid both at law and in equity. *Pennington vs. Gittings,* 2 *G. & J.,* 208; *Baltimore Retort and Fire Brick Co. vs. Mali,* 65 *Md.,* 93.

That decision was made by the Chancellor in 1849, and I know of no case in this Court in which it has been either expressly or inferentially overruled, or in which a different doctrine has been laid down. I cannot therefore assent to any expressions in the opinion of my brother BRYAN in this case, which either in express terms amount to an overruling of this decision of the Chancellor, or which the profession may reasonably construe as having that effect. In my judgment, the case does not call for any expression of opinion on that subject.

I am instructed by Chief Judge ALVEY to say that he concurs in the above views.

(Filed 23rd June, 1887.)