Judicial settlement of the accounts of John Gregg as executor of the will of Almira Gregg, deceased.

C. Carskadden, for executor.

H. B. Coman, for contestants.

KENNEDY, S. Almira Gregg, the testatrix, died at the town of Stockbridge, in this county, on the 23d day of March, 1892, leaving an estate amounting to $10,416.04. She left a will, in and by which, after a few specific legacies, she gave her entire estate to eight grandchildren, four of whom are children of John Gregg, the executor, the other four being children of her deceased son, David Gregg. Mrs. Gregg's husband died intestate, leaving considerable real estate; one of his farms, by some arrangement, becoming the property of said John Gregg. Having a dower interest in this farm, Mrs. Gregg and said John Gregg, on the 28th day of May, 1872, entered into a written agreement, under seal, which was duly acknowledged and recorded in the clerk's office of Madison county, in and by which she demised and leased to said John Gregg her undivided one-third interest in and to said land for and during the term of her natural life, and forever; said Gregg covenanting and agreeing to pay to her for the use of said premises, during the term of her natural life, the annual rent of $150, to be paid in semiannual payments of $75 each, and, in addition thereto, all taxes that might be assessed thereon. On the 6th day of July, 1886, she gave said Gregg a written power of attorney, authorizing him to transact all business that she might need to have done, and containing also the usual general powers for the transaction of her business. Upon this accounting, the contestant asks to have the executor's account surcharged with the rent of said farm to be paid under the lease since May 28, 1872, claiming that said Gregg never paid any rent to Mrs. Gregg, the amount now due being the sum of $2,820 for rent, and the sum of $2,185.77 of interest, computed at 6 per cent. from the time each payment became due, making a total sum of $5,005.77.

The evidence on the part of Mr. Gregg does not show that he ever paid Mrs. Gregg any rent whatever, but he claims to have been released from legal liability thereon by Mrs. Gregg, and, for the purpose of establishing this defense, relies upon certain declarations of hers, which are, in substance, as follows: In January, 1881, she had a conversation with one Hamilton Lamb, in which she said to him: "You know it was wrong for John to give that contract to pay me so much a year, but we had to do it to get a settlement with David." That she gave John the rent each year for doing her business and looking after her, and that she should pay him further than that. In July, 1886, she said to her grandson James A. Gregg that John's doing her business released him from all rent of the farm to her or the estate. In June, 1890, she said to Ralph Gregg, another grandson: "I want you to write it down that rent of farm is paid in full each year by his looking after me and doing my business;" and told him to make a memorandum so he could swear to it, "for the girls will make him trouble some day; they have threatened it. I have not paid him enough for what he has done for me." In January, 1892, she said: "I have heard so much talk here that I want you to remember that all claims for rent for your father's farm is paid by his services." That Ralph Gregg said to her: "You had better give father a receipt for the rent," to which she replied: "He is empowered to give himself a receipt. He is my acting attorney." In 1892 she said to the executor: "John, I want you to understand you owe me nothing; that you have done more than the rent of the place;" that he had never had what he ought to have had from his father's estate. During her last sickness she said: "I tell you, and this may be the last time, there is nothing due from your place to me." All these declarations were made to Mr. Gregg or to members of his family, and none are shown to have been made to other persons.

It is claimed on the part of the executor that the declarations above set forth release him from the payment of any rent that might otherwise be due upon the lease. We have no doubt that Mrs. Gregg intended to give the rent to her son, and supposed she had released him from liability upon the lease. She had sufficient means of her own to support herself, and it would be very natural for her not to insist upon the yearly payment of rent. But, notwithstanding these declarations, we do not think there was any valid release. The only way she could make the gift of her son's indebtedness to her valid and effective was to give him a receipt for the same, or something equivalent to it, from which the law would have construed the instrument as an assignment of the rent and of the right of action to Mr. Gregg. So far, therefore, as the claim is made that the declarations of Mrs. Gregg amount to a release from the payment, we must hold that nothing was said or done to bring the case within the law as stated in Gray v. Barton, 55 N. Y. 68, Ferry v. Stephens, 66 N. Y. 321, Beaver v. Beaver, 117 N. Y. 421, 22 N. E. 940, and McKenzie v. Harrison, 120 N. Y. 260, 24 N. E. 458, which, we think, are controlling in this case. These cases hold that, where the gift is the debt of the donee, the donor must deliver to the

debtor a receipt or some other equivalent instrument, in order to make the gift effective. The intention to make the gift is clear enough, but it was never executed, and the court cannot supply the absent fact which would make the gift certain and conclusive.

But it is claimed that Mr. Gregg is not liable upon the lease for the reason that Mrs. Gregg, in her several declarations, says that the rent was paid each year by her son's services. An examination of the evidence does not disclose the services upon which to base such declarations. Upon the settlement of her husband's estate, her property consisted of $5,000 in Oneida Valley Bank stock, which remained in her name until her death. She carried on no business. She had no business to transact, except to care for herself, and pay the small expenses connected therewith. She was not lending her money to various persons or investing it in different enterprises. She simply drew her dividends, and, whenever the accumulations sufficiently accrued, invested them in other stock at Oneida. The only business which Mr. Gregg is shown to have transacted for her, outside of those filial attentions which are due from a child to a parent, is the purchase of some stock in the Oneida waterworks, requiring no labor save drawing a check for the amount to be paid. We are unable to discover, during the existence of the lease, any foundation for the declarations relative to her business; for we do not find that Mrs. Gregg had any business about which, in the ordinary meaning of the word, services could be rendered. The facts do not seem to exist upon which it is claimed she bases her reason for the non-collection of the yearly rent. We assume that this is a case where the court will not inquire into the actual pecuniary value of services rendered Mrs. Gregg, and we have no doubt that Mrs. Gregg had the legal right to place her own estimate upon the value of the services of her son in the transaction of her business; and we should accept her valuation of them, and hold the rent to have been paid in the manner she declared it was paid, if we could find evidence that services had been rendered upon which it is claimed she based all her declarations relative to the payment of the rent. But all that we can find from the evidence, aside from some occasional act of slight importance, upon which Mr. Gregg can claim exemption, is the fact that he showed his mother that natural and filial devotion due to her, and which she accepted in the kindly spirit with which it was offered and bestowed. For these she had the right to bestow upon her son the gift of the annual rent, and, if such attention to a parent could be legally classed under the name of services or business, we should accept Mrs. Gregg's estimate of their value, and hold that there was nothing due upon the lease; but believing the law to be otherwise, we must hold that the facts bring the case within the decisions of the courts above cited. Had Mrs. Gregg commenced an action for the recovery of the rent, we apprehend that her declarations would not have been a defense to the claim. Mr. Gregg would have been obliged to show payment or services rendered for her equivalent to the amount due upon the lease. Her declarations could only have been used against her in corroboration of evidence of payment or services rendered on the part of the de-

fense; and we think the same rule applies in this proceeding. Not having shown a valid gift within the authorities, nor any release from liability on his lease, his only other defense is to prove payment in some form. This he seeks to do by declarations which seem to us insufficient for that purpose. In the settlement of estates there are constant claims of gifts coming before surrogates, supported generally by proof of declarations which the dead can neither admit nor deny nor the living disprove. It is therefore a safe and just rule of the courts to require evidence of the delivery of the gift to the donee if the property is capable of delivery, and, if the gift be a debt, that it shall be established by instruments in writing.

If we have stated the law applicable to the facts of this case correctly, the only duty remaining is to determine the amount of the claim against the executor which must be added to his account. Whether the surrogate has power to release from the large amount of interest found due upon the annual payments required to be paid by the terms of the lease may be doubtful; but in view of the evidence in this case, and the belief of each party that all had been done which was necessary to carry out the object intended, we shall follow the direction of the court in Livingston v. Livingston, 4 Johns. Ch. 286, and hold that the computation of rent should be without interest, because of Mrs. Gregg's neglect to recover the same sooner. If this view of the law should be erroneous, this large amount of interest is amply sufficient to repay Mr. Gregg for any disclosed and undisclosed services which he may have rendered for his mother. Let a decree be entered accordingly.

Decreed accordingly.