WILLIAM H. ROSS & COMPANY, APPELLANTS, VS. LIZZIE D. WALKER, EXECUTRIX *de bonis non* OF THE WILL AND ESTATE OF A. A. FISHER, DECEASED, FANNIE T. FISHER AND B. A. MEGINNISS, TRUSTEE, APPELLEES.

1. In order to constitute a valid gift the transaction must be consummated by delivery of the thing given.

2. Where the subject-matter of an alleged gift consists of a debt due the donor by the donee evidenced by due bills, and no receipt for the debt is actually given, and no credit entered, and where the evidence of the debt is not cancelled. destroyed, delivered to the donee or otherwise placed beyond the control of the donor, no valid gift is effected. Until consummated in the manner stated the transaction amounts to no more than a promise to give, which being without valuable consideration will not be enforced by the courts.

3. Where due bills are given for money loaned, specifying no time of payment, with no mention of interest therein, and from written correspondence between the parties at the time of the loans and the giving of the due bills, it appears that the parties did not regard the due bills as due immediately or as bearing interest until a demand for payment of the sums loaned, interest should be computed upon such loans from the time of such demand for payment, and not from the date of the due bills

Appeal from the Circuit Court for Leon County.

The facts in the case are stated in the opinion of the court.

*H. H. Buckman,* for Appellants.

*Fred T. Myers,* for Appellees.

CARTER, J.

In a cause in chancery pending in the Circuit Court of Leon county, wherein Lizzie D. Walker as the executrix *de bonis non* of the will and estate of Alfred A. Fisher, deceased, was complainant, and Fannie T. Fisher, William H. Ross and George G. Lyon were defendants, an order was made referring the cause to a master requiring all creditors of the deceased A. A. Fisher who had seasonably presented their claims to the executor to file them with the master, authorizing the parties to the suit to contest the validity of any claim so filed, and directing the master to inquire and report whether or not contested claims were proper charges against the estate. Appellants filed a claim which was contested by the defendant Fannie T. Fisher, and after having taken testimony as to its validity the master found it to be a proper charge against the estate, and so reported to the court. Mrs. Fisher filed exceptions to the report, which were sustained, and an order was made September 23, 1896, decreeing that the claim of appellants was not a valid claim against the estate. From this decree an appeal was taken to this court.

It appears from the evidence that William H. Ross, who resides in Mobile, Ala., was a nephew of the deceased, who resided at Tallahassee, Fla. In a letter written December 29, 1887, by Col. Fisher to Mr. Ross, he states "last Christmas makes the eightieth I have seen, and I have no right to expect much longer to live. I wish to talk with you more about my business and wind up my affairs on earth, so that I can depart contentedly. I have not got along so well this year as I anticipated. I have

45 S. C.

made but little at farming, not enough to pay expenses. Gov. Walker has been very kind to me and has pressed me time and again to call on him should I want money or anything else, he would be happy to aid me any way he could, and I have accepted his kindness to the amount of about forty dollars in small amounts at different times, as I wanted. My taxes is about a hundred dollars, my medical bills and store account included will require about three hundred and twenty dollars to satisfy them, and if you can conveniently spare me that amt. you will gratify me very much, and will esteem it very highly. I hope to get my claim in Washington or congress settled this session if possible; if so, I will return you the money, at the same time you and Geo. may expect to receive what property I have at my death, having full confidence that you will care for your aunt." On December 30th, 1887, Mr. Ross replied to this letter stating: "I am in receipt of your letter of 29th inst. and hasten to reply. I enclose you a check on Mechanics Nat. Bank, New York, for three hundred and twenty dollars, the amount you state will carry you along. I enclose a due bill for $420, including $100 last year, which you can return to me. This due bill need not trouble you at all. The amount can be returned only when you are able to do so. If it is never paid it will do me no harm." On January 1st, 1888, Col. Fisher replied to this letter stating "yours of the 30th Dec'r. last came safely to hand with the enclosed check for $320, for which I feel very thankful and unbounded gratitude. I herewith enclose the due bill as required for the $420. May God ever bless you, and I hope to be able to return you the same kindness some day yet."

On January 13, 1889, Col. Fisher wrote Mr. Ross quite a lengthy letter in which he says: "I was again forced to call on you for further favors to help me meet my little liabilities of last year. I was unfortunate enough not to have income sufficient to pay my liabilities. * * * My creditors have been very kind so far, I don't want them to be disappointed. I have their confidence and they shall not be disappointed. ....I hope you will realize my situation and grant me the kindness. You will not lose anything by it eventually." On January 21st, 1889, he wrote: "Your very welcome letter of the 18th inst. I have just received, and the check for the $250 enclosed for which I am truly very thankful and will try and make it answer the purpose of relief. I herewith inclose back to you the due bill for the same. I fear very much that I trouble you more than I ought, and will to do the best I can to prevent it. I assure you that no one on earth could appreciate your kindness more than I do. If I was not worn out by old age and bad health I would not be so dependent, but I trust it will not be so long." The due bills referred to in these letters are as follows:

"Tallahassee, Fla., Decr. 30, 1887.

Due Wm. H. Ross & Co., Four Hundred, twenty and 00-00 dollars, borrowed money

$420.00                          A. A. FISHER.

$250.00          Tallahassee, Fla., Jany. 18th, 1889.

Due to Wm. H. Ross & Co. Two Hundred and fifty and 00-00 dollars, borrowed money.

A. A. FISHER."

Col. Fisher died November 6, 1889, and on February 18, 1890, Wm. H. Ross & Co. presented the due bills to his executor for payment. Regarding these transactions Mr.

Ross testified that in 1887 and 1889 he was a member of the firm of Wm. H. Ross & Co.; that the sums mentioned in the due bills were loaned Col. Fisher by him for his firm; that he considered the loans a debt which he expected Col. Fisher or his estate to pay at some future time; that the debt was charged on the books of the firm and was considered a firm asset; that the money was advanced as a loan which witness intended and expected should be returned during Col. Fisher's lifetime if it could be done without inconvenience, and if not, to be paid out of his estate after his death; that the money was not advanced as a gratuity; that the loan to Col. Fisher was not in the usual course of the firm's business, but was actually made out of the firm assets and charged on its books; that it was made on the witness' responsibility, and if it should not be paid or collected out of Col. Fisher's estate he intended to make it good to the firm; that the money was loaned Col. Fisher because he was witness' uncle and had written witness letters saying he was in reduced circumstances and needed the money; that the money was not loaned upon any further consideration beyond the return of the amount loaned and the desire to relieve the necessities of his uncle; that Col. Fisher was not pressed for payment in his lifetime, nor was any demand made upon him for repayment of the loan, but immediately upon his death the due bills were presented to his executor with a view to having them allowed as legal claims.

On February 3, 1888, Col. Fisher executed his last will and testament, by which, after directing that his just debts be first paid, he gave, devised and bequeathed all his property real and personal to his wife Fannie T.

Fisher for and during her natural life, with remainder to be equally divided between his nephews, the said William H. Ross and George G. Lyon. By a codicil dated October 14, 1889, he authorized and empowered his executor, who was also by the will appointed trustee of the property devised to Mrs. Fisher, to mortgage or sell or convey and make good title to any portion of his real estate, and with the proceeds to improve any portion of the real estate not sold, or if necessity required to use the proceeds or any necessary part of it toward the comfortable support of Mrs. Fisher. It also appears that Mr. Ross, while not a man of large means, was financially able to help his uncle, and that the latter at the time of his death owned personal property not exceeding five hundred dollars, and some real estate in Tallahassee, the value of which is not stated, but presumably of no great value.

Mrs. Fisher testified that "Wm. H. Ross and George G. Lyon visited Tallahassee, Florida, to see their late uncle, Alfred A. Fisher, who was at the time a very old man and in failing health. This was to the best of my recollection in the spring of 1889. They came out to his house to see him. During the conversation my husband spoke to them about the moneys they had advanced him, and Mr. Lyon told him that what he had sent him was intended as a present, and was never considered as a debt. Mr. Ross also stated that he did not intend to claim what he had advanced as a debt, and that when he returned home he would destroy the due bills which his uncle had given him." Mr. Ross denied having such a conversation. He states that while in Tallahassee with Geo. G. Lyon on a visit to their uncle, the latter intima-

ted that he desired to leave his property to them, but that witness told him it was his duty to leave it to his wife during her life time, after the payment of his debts, and that his uncle had also intimated in one of his letters that he intended leaving his property to said nephews.

It is contended that the evidence shows that the moneys advanced Col. Fisher by Wm. H. Ross were advanced, not as a loan, but as a gratuity; or, if as a loan, were only to be repaid upon the payment of a certain claim that Col. Fisher was pressing against the United States, or by devise to Ross in his last will and testament. These contentions were made grounds of exception to the master's report.

A careful consideration of the evidence leads us to the conclusion that the moneys advanced by Mr. Ross constituted a loan, and not a gift. Due bills expressing the consideration as borrowed money were given. Mr. Ross testified that the transactions were loans; there is nothing in Col. Fisher's letters indicating that he regarded them otherwise, and Mr. Ross' testimony as to the circumstances attending them is not contradicted. Mr. Ross' letter of December 30, 1887, shows that though he did not expect to press his uncle for the money represented by the first due bill, yet he did expect the money to be returned when his uncle was able to return it. Col. Fisher's reference to his claim against the United States in his letter dated December 29, 1887, shows that he expected to return the money in a short time if he could get his claim against the United States settled at the then session of Congress, as he hoped to do.

Without further commenting on the evidence, which we have set forth at length, and which speaks for itself,

our conclusions are that it shows a loan of the money represented by the due bills, and not a gift; that such loan was general, and not a special one to be repaid only from a particular fund, or in the event such fund was collected, or by devise by last will and testament, and that the amount represented by such due bills is a valid legal claim against the estate of Col. Fisher, unless same had been released or discharged by some act of the creditor, which will now be considered.

Mrs. Fisher testified that during a conversation with her husband, she thinks in the spring of 1889, Mr. Ross stated that he did not intend to claim what he had advanced as a debt, and that when he returned home he would destroy the due bills which his uncle had given him. Mr. Ross, it is true, denies that any such conversation occurred, but we must assume in support of the ruling of the court below that the judge gave credit to Mrs. Fisher rather than to Mr. Ross, and as it was his province to set conflicts in the testimony, we see nothing which justifies us in overruling his conclusion upon this question of fact. The conversation testified to by Mrs. Fisher does not, however, constitute in a law a release, discharge or gift of the debt due by Col. Fisher. No consideration for Ross' promise appears, no receipt for the debt was given, the evidences of the debt—the due bills—were neither cancelled, destroyed nor delivered to the debtor. In order to constitute a valid gift the transaction must be consummated by delivery of the thing given. Horn v. Gartman, 1 Fla. 73; Powell v. Leonard, 9 Fla. 359. Where the thing given consists of a debt due the donor by the donee and no receipt is actually given, no credit entered, and where the evidence of the debt is not cancelled, de-

&troyed, delivered to the donee or otherwise placed beyon. the control of the donor, no valid gift is effected. Until consummated in the manner pointed out the transaction amounts to no more than a promise to give, which being without valuable consideration will not be enforced by the courts. The transaction testified to by Mrs. Fisher falls within this category, and, therefore, does not operate to discharge the debt of Ross & Co. 14 Am. & Eng.. Law (2nd ed.) p. 1031; 2 Schouler's Personal Property, section 97; Young v. Power, 41 Miss. 197; Wilson v.. Keller, 9 Ill. App. 347; McGuire v. Adams, 9 Pa. St. 286; In re Campbell's Estate, 7 Pa. St. 100; Irwin v. Johnson, 38 N. J. Eq. 347; Snowden v. Reid, 67 Md. 130, 8 Alt. Rep. 661, 10 Atl. Rep. 175; Gray v. Barton, 55 N. Y. 68, S. C. 14 Am. Rep. 181; Buswell v. Fuller, 156 Mass. 309, 31 N. E. Rep. 294; McKenzie v. Harrison, 120' N. Y. 260, 24 N. E. Rep. 458, S. C. 17 Am. St. Rep. 638.

The only question remaining relates to the period from which interest should be computed upon the debt.. The master allowed interest from the dates of the due; bills respectively. In this he was in error. No time of payment was specified in the due bills, nor was any mention of interest made therein. It appears to the court from the written correspondence between the parties at the time of the loans and giving of the instruments, that they did not regard the debts as due immediately or that interest was to be computed upon them, certainly not until after demand made for payment. No demand for payment thereof was made until the due bills were presented to the executor, February 18th, 1890. Interest should be allowed from that date. Milton v. Blackshear, 8 Fla. 161.

The decree adjudging the claim of appellants not to be

a valid claim against the estate of A. A. Fisher, deceased, is reversed, and the cause is remanded with directions to enter a decree allowing the same, with interest computed from February 18th, 1890, and for such further proceedings as may be comfortable to equity and consistent with this opinion.