Russell Estate.

558

Argued May 3, 1956. Before STERN, C. J., JONES, BELL, CHIDSEY and ARNOLD, JJ.

*Paul A. Wolkin,* with him *Leonard Sarner* and *Wolkin, Sarner & Cooper,* for appellant.

*E. P. Hannum* and *Ronald Souser,* with them *Thomas M. Hyndman* and *Souser, Schumacker, Kleeb & Lunkenheimer,* for appellees.

OPINION BY MR. CHIEF JUSTICE HORACE STERN, June 25, 1956:

The question here is whether the attempted proof of a gift inter vivos was sufficient to meet all factual and legal requirements. The court below held that it was; in our opinion it was not.

The essential facts are not in dispute and are as follows:

The decedent, Joseph P. Russell, was married in 1915 to the present appellant, Lillian Russell. He deserted her in 1937 and in 1939 she obtained in New York a judgment of separation from bed and board with an order for her support and in 1943 another order for support in the Municipal Court of Philadelphia. He fell considerably into arrears and on November 4, 1952, appellant's counsel wrote to him stating that he had been retained by his wife to represent her and asking that he or his attorney communicate with him for the purpose of discussing the matter. Six days later, on November 10, 1952, decedent issued a check on a Chicago bank in the sum of $55,000 to the order of Hildegarde E. Laier, an amount which constituted practically his entire liquid assets.

Miss Laier, then aged 22, was the daughter of Mr. and Mrs. Emil A. Laier, in whose family decedent had lived from the time he abandoned his wife, Mr. Laier and he having been employed in the same industrial establishment; there is no question but that he was on intimate terms with the Laier family. Miss Laier testified in regard to the conversation attending the delivery to her of the $55,000 check as follows:[1]

---

[1] For some reason not apparent counsel for appellant, although objecting at the hearing to the competency of Miss Laier as a witness, states in his brief that he "is not relying on the grounds of lack of competency," and he does not press his objection thereto. It is difficult to see how the alleged gift could have been proved without her testimony; that of the other witnesses was vague and unsubstantial.

"Uncle Joe [the decedent] came into my room and said that he had fifty-five thousand dollars that he wanted me to take and put in my bank account, and, at a later date, he might possibly ask for some of the money back. And, whatever he left—whatever he left to me, was to be split between my brother and myself, and it was a gift from him; and I was to please keep the whole transaction a secret. And that was all that was said." She explained further: "In November he did tell me, sir, that he would take a portion of the money, and, what was left in my account was to be a gift, to be split between my brother and myself. The amount was not stated."

Miss Laier endorsed the check and gave it right back to decedent, who deposited it in her account in the bank. She did not add the amount to the balance in her check book but merely noted it in the back as a separate item against the initials, "J.P.R.," and she never made any drawing against it except as hereinafter stated. No gift tax return was filed by decedent in reference to the transfer of this $55,000.

As a result of negotiations which ensued after receipt of the letter from counsel an agreement was entered into on June 25, 1953, whereby decedent agreed to increase the Philadelphia support order from $27.50 to $55.00 per week and to satisfy a New York judgment for arrears by the payment of a lump sum of $2,750, appellant agreeing to forgive and release all other arrearages then due.[2]

---

[2] While not directly relevant to the present proceedings it may be noted that in this agreement decedent represented that his earnings were in the approximate amount of $10,000 per year and his net worth the approximate sum of $30,000, whereas in fact he was then receiving a salary from the company where he was employed of $29,000 per year and he held stock in that company of a book value of nearly $500,000.

On July 4, 1953, less than two weeks after he had thus been freed from further claims by his wife, decedent took back from Miss Laier $20,000 of the sum which he had previously delivered to her. Her account of her interview with him on that occasion was as follows: "He said that he would like me to give him—write him a check for twenty thousand dollars. The remaining portion was to be split between my brother and myself. And, I didn't want to take it. At the time, we had an argument, and he said it was a wedding present from him, and it was still to be kept a secret. . . . At that time I did say that I didn't want the money. I didn't want his money; I was earning my own salary; and I was marrying a man that was making an income of his own. And, he said that it was a wedding gift; and he wanted my brother to have a share, too; because, whatever he did for me, he wanted my brother to have just as much. And I accepted it on the basis of a wedding gift." She noted in her check book against the "J.P.R" item the $20,000 withdrawal and the $35,000 balance, but she still kept the record of this item separate from the balance of her own funds.

Three weeks after this transaction, on July 28, 1953, Russell died and by his will left half of his estate to Miss Laier (who married the following January and became Mrs. Hildegarde L. Seachrist) and half to her minor brother, James E. Laier, and he appointed their mother as executrix. In October, 1953, appellant filed her election to take against the will, thereby entitling herself to half the estate (no children having been born to her and decedent). Some two or three weeks thereafter Miss Laier added the $35,000 to her check book balance, and in March, 1954, she issued her check for $17,500 to the order of her brother's guardian. Appellant filed an objection to the account of the executrix of the estate on the ground that it failed to include the

$35,000 as an asset, but the court below found that decedent had made a valid gift of it to Miss Laier. The present appeal is by Mrs. Russell from its decree so holding.

It will be seen from the facts thus narrated that there were two transactions between decedent and Miss Laier, and it is her contention that the first created a gift of the $55,000 of which she subsequently returned $20,000, and the second a reiterated gift to her and her brother of the $35,000. As to the first transaction it is our opinion that no gift was effected because donative intent was wholly lacking. It is obvious that decedent, who had fallen into large arrearages on the order for his wife's support and was being brought to book in the matter by her counsel, took the precaution before entering upon negotiations with him to denude himself of all his cash resources which would naturally have been the immediate target of his wife's attack, a purpose which was emphasized by his cautionary request to Miss Laier to keep the transaction a secret. But apart from the well-nigh obvious inference that the delivery of the $55,000 to Miss Laier was designed merely to put that sum beyond the reach of an attachment and not to make her the owner thereof, her own account of what was said by decedent in delivering her the check clearly shows that she was receiving it merely as a custodian and with a definite obligation to return it or any part of it on his demand. She testified that he wanted her to take it and put it in her bank account and *whatever was left*—not the $55,000 but *whatever was left*—after returning any amount he might ask for was to be a gift from him; she recognized and accepted an obligation to make such return even to the extent of the entire amount. After she did return him $20,000 then, and only then, did decedent express an intention to make her an absolute gift of the remaining $35,000; she

testified that she "didn't want to take it"; and by thus demurring to its acceptance she conclusively shows that until that time no gift had been made and that decedent had not relinquished dominion and control over the $55,000 or any specified portion thereof.

As to the transaction of July 4, 1953, entirely different considerations apply; this time the trouble stems from lack of the formalities legally necessary for the validity of such a gift. On this occasion decedent in effect told Miss Laier, according to her testimony, that she was no longer to be obligated to return the remaining $35,000 but that she was to keep it as a gift from him. The question arises: What does the law require to effectuate the gift of such a chose in action—the forgiveness or release of an obligation—as distinguished from the gift of a chattel or tangible object? To constitute a valid gift inter vivos there must be not only a donative intent but also an active or constructive delivery of the thing to be given. In the case of an obligation represented by physical evidence, such as a bond or a note, the delivery thereof, being the best and only delivery that can be made, is sufficient for the purpose. But, as stated in Brown on Personal Property, p. 199, §61: "When the chose in action is not embodied in a bond, bill of exchange, promissory note, or other instrument which . . . is in a particular sense the tangible representative of the obligation, the difficulty of discovering in a gift thereof something analogous to the delivery of tangible chattels is immeasurably increased." Accordingly, in the case of the gift of a debt or obligation not so evidenced, the law requires either the delivery of a receipt acknowledging payment in full (*Lewis's Estate*, 139 Pa. 640, 22 A. 635; *Fassett's Appeal*, 167 Pa. 448, 31 A. 686; *Schwarz v. Philadelphia*, 337 Pa. 500, 507, 508, 12 A. 2d 294, 298) or a written assignment or some equivalent instrument (*Bond v.*

*Bunting,* 78 Pa. 210, 218; *Hawn v. Stoler,* 208 Pa. 610, 613, 614, 57 A. 1115, 1116).[3] A mere oral donation is not sufficient. Repeated throughout the cases is the pronouncement made in 2 Kent's Commentaries 716, §439, that "Delivery, in this, as in every other case, must be according to the nature of a thing. It must be an actual delivery, so far as the subject is capable of delivery. . . . If the thing be not capable of actual delivery, there must be some act equivalent to it. . . . If the thing given be a chose in action, the law requires an assignment, or some equivalent instrument, and the transfer must be actually executed."

"A gift of a debt due by parol can be made only by the creditor's execution of a release in writing, or the performance of some act by which the debt is placed beyond his legal control." (citing cases): 38 C.J.S. 830, §47.

"As in the case of gifts of other property, there must be a delivery, actual or symbolical, in order to effect a gift of a debt due by the donee and this delivery must be made by a transfer of the possession of the evidence of the indebtedness or its equivalent. Thus, it has been held that a gift of a chose in action not having such tangible body as to be chattel property, including the gift of a simple debt, cannot be made effective without a deed. the execution of an adequate release or transfer in writing, or the performance of some other act placing the debt beyond the legal control of the creditor.": 24 Am. Jur. 767, 768, §71.

"The fact that the creditor does not intend to call on the debtor for payment of the debt, and so states,

---

[3] *Blose Estate,* 374 Pa. 100, 97 A. 2d 358, cited by appellee, is clearly distinguishable in that it involved the transfer of a savings bank account by a direction to the bank to assign the account to the intended donee, such direction being accompanied by the delivery of the bankbook to the donee and by the latter to the bank.

no receipt or release being given, does not establish a gift": 37 A.L.R. 1150 [citing many cases].

The cases reciting and implementing this principle are legion.

"The rule has long been that no merely oral declaration will transfer a debt into a gift." *Quirk v. Quirk*, 115 Fed. 199, 206.

"Where . . . the thing given is a chose in action, and represented by a note, bond, or bill made by a third party, all the authorities agree that a delivery of the note, bond, or bill, unindorsed by the donor, will suffice:" [citing cases]. "But it is equally well settled that when a chose in action is not thus represented by a note, bond, bill, or other instrument in writing, which can be delivered, but is merely a claim against a third party, which must be established by parol, a written assignment of the demand, by the donor to the donee, is essential to complete the delivery, whether the gift be one inter vivos or causa mortis." [citing cases]: *Castle v. Persons*, 117 Fed. 835, 841, 842.

"Where the subject-matter of an alleged gift is a chose in action, without note, bond, or other written obligation, it has been very generally held that a written assignment is required in order to [effect] a valid gift." [citing cases]: *Parker v. Mott*, 181 N.C. 435, 439, 107 S.E. 500, 502.

"Where the thing given consists of a debt due the donor by the donee, and no receipt is actually given, no credit entered, and where the evidence of the debt is not canceled, destroyed, delivered to the donee, or otherwise placed beyond the control of the donor, no valid gift is effected": *Ross v. Walker*, 44 Fla. 704, 711, 712, 32 So. 934, 937.

"In this case the subject of the claimed gift had no corporeal existence. It was a pure chose in action without palpable form, and there was no document, symbol

or token that was evidence of title to it. . . . the great weight of authority . . . and we think the better rule, is that a gift of a simple debt without palpable form by the creditor to the debtor cannot be made effective without the execution and delivery of some instrument or the performance of some act or acts placing the debt beyond the legal control of the creditor." (citing cases) : *Michael v. Holland,* 111 Ind. App. 34, 41, 40 N.E. 2d 362, 365.

"As a debt cannot be delivered from one hand to another, the law has provided that it must be assigned in writing, and where the debt is to be transferred from the creditor to the debtor, the liability must be extinguished by a release or some instrument of an equivalent character." : *Snowden v. Reid,* 67 Md. 130, 132, 8 A. 661, 662.

Without extending the list of such quotations, reference may be made to a multitude of other authorities to the same effect, including *Adams v. Merced Stone Company,* 176 Cal. 415, 418, 419, 178 Pac. 498, 500; *Wilson v. Keller,* 9 Ill. App. 347, 348; *Berry, Admr. v. Berry,* 238 Ill. App. 507, 510 ("A gift inter vivos made by parol of a chose in action of this character, not evidenced by a written instrument, is invalid.") ; *Tucker v. Brown,* 199 Wash. 320, 329, 92 P. 2d 221, 225; *Millett v. Temple,* 280 Mass. 543, 550, 182 N.E. 921, 922 ("This principle has its roots deep in the common law and comes from early times [citing a multitude of cases]. The overwhelming weight of authority, if not the unbroken current of decisions, supports this principle.") ; *Shepard v. Shepard,* 164 Mich. 183, 200, 129 N.W. 201, 208; *Young v. Power,* 41 Miss. 197, 210, 211; *In re Gregg's Estate,* 32 N.Y.S. 1103, 1104, 1105 (A gift of a debt owing from the donee to the donor can be made effective only by the delivery to the donee of a receipt or some instrument equivalent to it.) ; *VanCleef v. Max-*

*field,* 171 N.Y.S. 333, 336 (aff. 172 N.Y.S. 923) ; *Cohen v. Cohen,* 177 N.Y.S. 180, 182 ("It seems to be beyond argument that no merely oral expression of an intention to forgive an unevidenced debt can effectuate the intending donor's purpose."). See also 2 Williston on Contracts, 1283, §440 (The requirements of the law for the transfer of an intangible right "sometimes defeats reasonable and proper intentions of a deceased owner, but the protection against fraud and the certainty given by the required formalities have been thought a sufficient answer to that objection.")

In the present case, even though decedent, according to Miss Laier's testimony, intended to release her from her obligation to him, the alleged gift failed because it lacked the receipt, deed, written assignment or similar instrument required by the law to make it effective. The result is that appellant is entitled to half of the $35,000 in controversy and Mrs. Seachrist and her brother to the other half.

It remains but to add that the executrix will be subject to surcharge only if she fails to take proper measures for the recovery of the $35,000 and its restoration to the decedent's estate for distribution as herein indicated.

Decree reversed at the cost of the estate.

———

DISSENTING OPINION BY MR. JUSTICE BELL:

I disagree not with the principles set forth in the majority opinion, but with their application to the facts in the instant case. Decedent on November 10, 1952 *gave* Miss Laier (to whom he stood in loco parentis) a check for $55,000. as a gift to be divided equally between herself and her brother who was a minor. He told her "he might possibly ask for some of the money

back". She deposited the check not in his bank account or in a joint bank account but *in her own bank account.* That was a valid delivery and constituted a valid gift subject to revocation by the donor. The motive of the donor is, at least as far as this case is concerned, immaterial. It is an indisputable fact (a) that there was a valid delivery to Miss Laier and (b) that she always retained this money in her sole and exclusive possession. The point overlooked by the majority is that *this was not a debt.* It was money which, we repeat, Miss Laier had in her own exclusive possession, in her own bank account.

On July 4, 1953, decedent asked Miss Laier to give him back $20,000. which she did; *and the remaining portion he told her was to be divided between her brother and herself.* She was engaged to be married, and he told her "It was a wedding gift and he wanted my brother to have a share, too; because whatever he did for me he wanted my brother to have just as much, and I accepted it on the basis of a wedding gift." This constituted a valid *irrevocable* inter vivos gift to Miss Laier and her brother; there was donative intent, *an actual delivery by donor and exclusive possession* by Miss Laier. This was not a debt, or a release of a debt owing by the donee to the donor; it was not, as implied by the majority, a gift of a mere chose in action as that designation is used by the cases—it was an absolute unconditional gift of $35,000 dollars, all of which was in the possession of the donee. As the majority opinion says: "Delivery in this as in every other case must be according to the nature of a thing. It must be an actual delivery, so far as the subject is capable of delivery . . . If the thing be not capable of actual delivery, there must be some act equivalent to it." The majority opinion admits that the decedent had a donative intent on July 4, 1953; and the facts clearly demonstrate, we

repeat, that there was an actual delivery to donee and actual and exclusive possession by donee of the $35,000.* in controversy.

I would affirm the decree of the lower Court.

---

* Testator's widow by electing to take against the will inherited a substantial estate, entirely apart from the $17,500. which she seeks herein to obtain.