**State Farm Mutual Automobile Insurance Company v. Skivington**

*Rolf E. Kroll,* for plaintiff.
*Lawrence F. Barone,* for defendant.

BAYLEY, *J.,* February 1, 1996—On June 21, 1993, defendant, Lenora M. Skivington, who was then 17 years, 9 months old, purchased an automobile insurance policy on an assigned risk plan from plaintiff, State Farm Mutual Automobile Insurance Company, for her Pennsylvania registered 1981 Chevrolet. Defendant signed rejections of uninsured and underinsured coverage. She was in a motor vehicle accident with an uninsured motorist on August 12, 1993. Thereafter, defendant filed a petition to compel plaintiff to proceed with an uninsured motorist arbitration on a claim for damages allegedly sustained in that accident. Plaintiff then filed this complaint seeking a declaratory judgment.[1] Plaintiff maintains that this court has jurisdiction to determine that defendant has no uninsured motorist coverage. Plaintiff also maintains that defendant may not, after her accident, utilize her minority status to disaffirm her rejection of such coverage. Defendant maintains that this entire dispute must be resolved in arbitration. In the alternative, she maintains that she may disaffirm the rejection of uninsured motorist coverage made when she was a minor, and require plaintiff to retroactively provide coverage for her accident on August 12, 1993.

Plaintiff relies on *Federal Kemper Insurance Company v. Wales,* 430 Pa. Super. 208, 633 A.2d 1212 (1993), in which Federal Kemper appealed from the order of a trial court sustaining preliminary objections and dismissing its declaratory judgment action. The facts set forth by the Superior Court were:

---

1. 42 Pa.C.S. §7531 et seq.

manded defendant return the ring; his gift of the ring is the only one plaintiff asked defendant to return. In fact, defendant offered to return it if plaintiff would take back the Buick. Defendant argues the ring was not an engagement ring because she promised to marry plaintiff before he presented it. However genuine this sentiment, it does not contradict the implication that the ring was intended as an engagement ring and was treated as such by both parties during their engagement and after its demise.

Most Pennsylvania courts have recited an additional requirement for a plaintiff-donor seeking to recover an engagement gift: he or she must prove the donee was responsible for the failure to marry. See *e.g., Pavlicic v. Vogtsberger,* 390 Pa. 502, 510, 136 A.2d 127, 131 (1957) (donee must breach the engagement); *Stanger v. Epler, supra,* at 416, 115 A.2d at 199 (marriage must not take place due to the fault of donee); and *Murphy v. Studer, supra,* at 715 (donee must break off the engagement).[2] Citing the language from *Stanger,* the defendant in the present case urges on this court the proposition that the donee of an engagement gift is not "at fault" in breaking off the engagement when the donee has some good reason to break up. Specifically, defendant argues that plaintiff's physical violence against her, in the course of the parties' engagement, caused her to break off the engagement; because plaintiff's behavior caused defendant to break up, he was "at fault" for the breakup and should not be entitled to recover the engagement ring. (N.T., II, 22-23.)

---

2. The court in *Ruehling v. Hornung* would permit the donor of an engagement ring gift to recover the gift even where the engagement was dissolved by mutual consent or by death or legal disability on the part of either party. *Id.* at 538.

Apparently, Pennsylvania courts recognize the rule that the donor of an engagement gift may recover it when the engagement is broken by the donee for no good reason. See *e.g., Pavlicic v. Vogtsberger, supra* (donor permitted to recover the many expensive engagement gifts he gave to donee after donee disappeared with the gifts and ran off to marry another man); and *Semenza v. Alfano,* 443 Pa. 201, 279 A.2d 29 (1971) (donor permitted to recover the one-half interest in property which he gave to donee upon her promise to marry him, where donee canceled the wedding because donor failed to pay to decorate and furnish the property). And, when the donor of an engagement gift breaks the engagement for no good reason, our courts apparently refuse to permit that party to recover the gift from the donee. See *Preshner v. Goodman,* 83 D.&C. 387 (1952) (donee permitted to recover the value of an engagement ring where the donor repudiated the engagement and forcibly removed the ring from the donee's finger).

Our courts have never gone so far as to hold, however, that a donor of an engagement gift may not recover it where the donor gave the donee some good reason to break off the engagement. Neither have our courts ever articulated any standards for assistance in discerning such good reasons from the bad; they simply have not delved into the issues of "fault" which might underlie the breakup of an engagement. The defendant may very well have had an excellent reason to break her engagement to plaintiff, but in the absence of any guidance in this area, the undersigned declines to draw the legal conclusions necessary to adopt defendant's reasoning.

Having found plaintiff's gift to defendant of a diamond ring was an engagement ring and defendant, the donee, broke the engagement, plaintiff is entitled as

a matter of law to recover the ring or its reasonable value. *Pavlicic v. Vogtsberger, supra* at 510-511, 136 A.2d at 131; *Ruehling v. Hornung, supra* at 538-540. Because defendant disposed of the ring in question several years ago, plaintiff is entitled to recover from defendant the reasonable retail or market value of the ring: at the time of its purchase in December, 1989, this value was $16,960.[3]

### B. *Defendant's Claim: The Gift of the Buick Riviera*

Defendant's counterclaim seeks $21,763.20, the sum of the 40 monthly payments outstanding for the Buick which plaintiff refused to pay following the breakup. Defendant argues the car and all its attendant monthly payments constituted a single, unconditional inter vivos gift from the plaintiff, complete upon defendant's acceptance of the gift. Plaintiff denies the Buick was a gift, arguing instead defendant bought it herself.

The requisites for a valid inter vivos gift in all cases are intent, delivery, and acceptance. *In re Estate of Sipe,* 492 Pa. 125, 130, 422 A.2d 826, 828 (1980). The element of intent requires a clear and unmistakable intention on the part of the donor to make a gift must exist. *Teats v. Anderson,* 358 Pa. 523, 527, 58 A.2d 31, 33 (1948). The element of delivery requires an actual delivery of the gift, so far as the subject is capable of delivery; delivery in every case must be according to the nature of the thing, and if the thing is not capable

---

3. As noted in finding of fact no. 15, this figure includes $15,000 for the stone itself, $1,000 for the mounting, and $960 for the 6 percent sales tax in effect at the time of the purchase.

of actual delivery, there must be some act equivalent to it. *Russell Estate,* 385 Pa. 557, 564, 123 A.2d 708, 712 (1956).

In the opinion of the undersigned, the direct and circumstantial evidence which defendant produced is more than sufficient to prove that the Buick was a gift from plaintiff to defendant. Defendant testified plaintiff protested when she wanted to purchase an inexpensive car and asked defendant to let him find a car for her. Plaintiff subsequently showed defendant the Buick and told her he wanted to buy that car for her. On the installment sale contract, plaintiff was listed as buyer and defendant as co-buyer. Both parties signed the contract. Plaintiff made a down payment of $2,000 on the car and paid eight monthly payments from February to September, 1990. Plaintiff stopped making payments only after defendant broke the engagement. The defendant's mother, Alba Ferri, testified that shortly after defendant took possession of the Buick, plaintiff showed her the car and stated he had bought it for defendant. By these statements and actions, plaintiff demonstrated a clear and unmistakable intention to give the Buick to defendant as a gift and to assume full financial responsibility for its purchase.

Moreover, circumstantial evidence was introduced at trial which tends to prove this point. The booklet of vouchers, pre-printed by GMAC to accompany each monthly payment to GMAC, were made out in the name of Michael Chester, the plaintiff. In addition, defendant testified clearly that she did not like the size, color, or expense of the Buick and would not have bought the car for herself; in fact, she was compelled to take a second job to make the monthly payments once plaintiff ceased making the payments himself. This evidence militates against plaintiff's argument that de-

fendant chose to buy herself the Buick. It is sound circumstantial evidence that the car was a gift from plaintiff.

It is uncontradicted that defendant took possession of the Buick and drove it as her own after plaintiff and defendant signed the paperwork necessary to purchase the car. This satisfies the requirement that the defendant-donee accepted the car as a gift.

The evidence presented at trial also established delivery of the gift of the Buick which was completed on January 15, 1990 when plaintiff signed the installment sale contract for the Buick. What, however, is the nature and extent of the gift plaintiff gave defendant on that date? This issue is a matter of first impression for our courts. The subject of this gift is an automobile, purchased new under a 48-month installment payment plan. Plaintiff appears to argue, assuming the Buick was a gift to defendant, plaintiff only delivered as much of the gift as he actually paid for: the $2,000 down payment plus the value of the eight monthly payments. Defendant argues that plaintiff delivered a gift of the car and all the payments required to effectuate its purchase under the 48-month payment plan.

It is axiomatic that delivery of a gift must be according to the nature of the subject of the gift. *Russell Estate, supra* at 564, 123 A.2d at 712. As stated above, it is the conclusion of the undersigned that plaintiff intended to make a gift of the new Buick to defendant. If plaintiff had paid cash for the car on January 15, 1990, it is certain delivery of the gift would have been completed and defendant would have acquired the Buick and its entire value on that date. As it was, plaintiff did not purchase the car with cash. Plaintiff purchased it by making a down payment of $2,000 and entering

into a 48-month installment contract with GMAC, the lienholder. The nature of plaintiff's gift was constant regardless of plaintiff's method of payment. It is the opinion of the undersigned plaintiff completed delivery of his gift to defendant when he contracted to pay the full value of the Buick to GMAC in monthly installments, the same as if plaintiff had paid cash to the Buick dealership.

Plaintiff is liable, then, for the full value of the gift of the Buick Riviera. As noted in the findings of fact, above, the sale price of the Buick was $28,115.84, reduced to $26,115.84 by plaintiff's down payment of $2,000 at the time of sale. Payment of this sum was scheduled for 48 months, at $544.08 each month. Plaintiff made eight of these monthly payments, totalling $4,352.64 of the $26,115.84 owing on the car, before attempting to renege on his gift to defendant by refusing to remit further payment. Forty monthly payments totalling $21,763.20 were outstanding at that point. Defendant has made or will have to make each of these payments herself. As plaintiff is liable for the full amount of the purchase price of the Buick for which he contracted, defendant is entitled to recover the sum of these monthly payments: $21,763.20.

### C. *Offset of the Value of the Engagement Ring Against Defendant's Recovery*

As discussed above, the diamond ring which plaintiff gave to defendant was an engagement ring, which property or reasonable value thereof plaintiff was entitled to recover upon defendant's breach of the engagement. In the case at bar, however, defendant kept the ring after she broke off the engagement and sold it for $6,000

when plaintiff refused to continue making payments for the Buick he had given her as a gift. Defendant used the proceeds from the sale of the ring to help finance the monthly car payments. Because the ring or its reasonable value properly belonged to the plaintiff, defendant's recovery of $21,763.20 against plaintiff for the car payments made by defendant must be offset by the $6,000 defendant received from the sale of the ring. Defendant is therefore entitled to recover only $15,763.20 from plaintiff.

## III. CONCLUSIONS OF LAW

(1) Plaintiff's gift to defendant of a diamond ring was an engagement ring. Defendant broke the engagement between the parties. Because defendant, the donee, broke the engagement, plaintiff is entitled as a matter of law to recover the ring or its reasonable value. *Pavlicic v. Vogtsberger, supra* at 510-511, 136 A.2d at 131; *Ruehling v. Hornung, supra* at 538-540. Because defendant disposed of the ring several years ago, plaintiff is entitled to recover from defendant the reasonable retail or market value of the ring: at the time of its purchase in December 1989, this value was $16,960.

(2) Plaintiff intended to make a gift of the Buick Riviera to defendant and completed delivery of this gift to defendant on January 15, 1990 when he contracted to pay the full value of the car to GMAC in monthly installments. Defendant accepted this gift on this date and the gift was complete. Plaintiff is liable, then, for the full value of the gift of the car. The sale price of the car was $28,115.84, of which plaintiff paid $2,000 and monthly payments totalling $4,352.64 before attempting to renege on his gift. Monthly payments totalling $21,763.20 were outstanding at that point, which

payments defendant has made or will have to make. Plaintiff is liable to defendant for these payments.

(3) After breaking her engagement to plaintiff, defendant sold the engagement ring given to her by plaintiff. Defendant received $6,000 from this sale and applied this toward the Buick's monthly payments. Because plaintiff was entitled to recover the ring or its value upon defendant's breach of the engagement, defendant's recovery of $21,763.20 against plaintiff must be offset by the $6,000 defendant received from the sale of the ring. Defendant is therefore entitled to recover only $15,763.20 from plaintiff.

## IV. ADJUDICATION

And now, November 23, 1993, following a nonjury trial which took place on September 30, 1993 and October 4, 1993, and the preparation of the within findings of fact, legal discussion, and conclusions of law, this court finds as follows:

(1) In favor of plaintiff Michael Chester on his cause of action against defendant Lora Ferri in the amount of $16,960.

(2) In favor of defendant Lora Ferri on her counterclaim against plaintiff Michael Chester in the amount of $15,763.20.

(3) The court molds its findings in paragraphs 1 and 2 of this order to offset the amount awarded defendant Lora Ferri on her counterclaim against the amount awarded plaintiff Michael Chester on his cause of action.

(4) The court enters a verdict in favor of plaintiff Michael Chester against defendant Lora Ferri in the amount of $1,196.80.