## Berryhill's Administratrix's Appeal.

A trustee cannot be permitted to set up a fraudulent acquittance obtained by wilful misrepresentation from his *cestui que trust.*

Nor is he to be allowed a credit for travelling expenses incurred in order to make payments to his *cestui que trust* in a neighbouring city, against her express remonstrances.

A trustee who has been guilty of wilful misconduct in the execution of his trust, is not entitled to commissions for his services.

APPEAL IN EQUITY from the Common Pleas of *Philadelphia.*

This was a bill in equity by Catharine Berryhill against Elizabeth Hauptman, administratrix of John Hauptman, deceased, who was the trustee for the complainant, under the will of her father John Hauptman, Sr., for an account of the trust estate. The complainant died during the pendency of the suit, and it was revived by Catharine Ann Irwin, her administratrix.

The facts of the case are fully stated in the following extract from the Master's report to the court below.

"Jacob Hauptman, Sr., died in the city of New York in the year 1828, having first made his last will, bearing date 13th September 1813, whereby he, *inter alia,* divided the residue of his estate into four equal portions, three of them to his three sons, Jacob, John, and George, whom he also appointed his executors, and the fourth to his said executors in trust, to invest it in sufficient landed security, and pay the interest to his daughter, Mrs. Catharine Berryhill, half-yearly during her life, and the principal at her decease was to go to her issue; that all three of the executors were duly qualified in New York, John Hauptman then living in Philadelphia, where he continued to live till his decease, but that George died a few years after his father, whereby this trust devolved on John and Jacob, as surviving executors. That out of said residuary estate, said surviving executors invested for this trust four thousand dollars ($4000) in a mortgage well secured on a house in New York, the interest whereon was paid to the trustees by the successive owners of the mortgaged premises, and for aught that appears to the contrary was paid over by the trustees to Mrs. Berryhill. That this investment continued from May 1st 1830, until 19th of May 1840, when it was paid off under the following circumstances, viz., the mortgage-papers had been in charge of Jacob Hauptman, who lived in New York, but John Hauptman, in 1836, under pretence of wanting to look at them, watched where his brother put them, and afterwards, as he subsequently boasted, clandestinely took them away and kept them until the mortgage was paid off; that he received for interest thereon six per cent., or $240 per annum, which, up to May 1st

[Berryhill's Administratrix's Appeal.]

1839, he paid Mrs. Berryhill, less five per cent. commissions, which he always deducted. When the interest to May 1st 1839 was paid, he notified the owner that one year therefrom he would require the principal, the owner not seeking to pay it off, and being willing to let it remain. Accordingly, on May 19th 1840, he received payment in full of the $4000, the principal of the mortgage, and entered satisfaction thereon, styling himself in the entry of ' Surv'g Ex'r.,' inducing the officer to believe that he was sole surviving executor, which was not the fact, as his co-executor, Jacob Hauptman, was in full life, though he never knew of the breaking up of the investment until afterwards, and John Hauptman never reinvested the money, or at least there was no evidence that he did so: on the contrary, it was in proof from his declaration and actions, that he meant to keep the $4000 for himself, and only to pay Mrs. Berryhill during her lifetime such interest as he thought proper. He repeatedly declared, and sometimes in the most profane manner, that her daughter, Mrs. Irwin, should have no part of the principal. His mode of paying interest to Mrs. Berryhill was as follows: First he determined to pay her but five per cent., or $200 per annum, which he said was Pennsylvania interest, then he deducted from it five per cent., or $10, for his commissions, and $8 more as his travelling expenses to and from New York, whither he would insist upon going to carry her the money, though requested to remit by draft and save this unnecessary expense; that he was a man of high temper and violent passions, his sister stood in awe of him, and for peace sake submitted to his exactions, he always insisting at every payment upon a receipt in full of all demands. These visits to New York and interviews with Mrs. Berryhill were usually thus unpleasant from his behaviour, and in this way she got but $182 per annum instead of $240, which was the annual interest on the mortgage, or $228, if his commissions be deducted. On one occasion when he did not come on as usual to pay her, she came with her daughter to Philadelphia to get her money, but instead of paying her, he went back to New York with her on her return, and there paid her $182 as usual. He did not pay the interest in 1853, whereupon plaintiff and her daughter came to Philadelphia, where he paid her $100 on account, which was the last money she received. He died in February 1854, intestate, leaving a widow, the defendant, who administered, and leaving also real estate.

" The master having found the foregoing facts, proceeds, in the first place, to take an account, and in stating it, he is of opinion, 1st, that the breaking up of the mortgage investment was wanton and uncalled for: 2d, that John Hauptman never reinvested in landed security, as directed by the will: 3d, that his whole course showed oppression, high-handedness, and bad faith, and a determination, improperly, to pervert his trust, and keep the principal:

[Berryhill's Administratrix's Appeal.]

4th, that the $4000 was exclusively trust money for Mrs. Berryhill and her issue : and, 5th, that it came solely to John Hauptman's hands, wherefore, in settling the interest account, the master deems it his duty to charge said John Hauptman with six per cent., or $240 per annum interest on the $4000, from 19th May 1840, when the mortgage was paid off, to the 12th of June, 1858, when Mrs. Berryhill died; to disallow travelling expenses as unnecessary and oppressive; to allow him no commissions on account of his improper conduct and abuse of his trust; and to credit him only with payments actually made."

On exceptions to the master's report, by the defendant, the court below partially sustained the exceptions and made the following decree:—

"This case came to be heard on bill, and answer, and proofs, and on the master's report, and exceptions thereto, and was debated by counsel on both sides. Whereupon it is considered and adjudged that the master ought not to have charged $2052 as the arrears of interest, but should have allowed the various payments of interest at the rate of $182 per annum, during such times as they were paid as in full on the occasions of such payments of interest, and that, with that exception, the report of the master be confirmed, and that defendant pay to the said Catharine Ann Irwin, administratrix of the said Catharine Berryhill, deceased, the sum of $1356 in full of arrears of interest, instead of $2052 as awarded by the master. And further, that defendant pay to said Catharine Ann Irwin, in her own right, the amount awarded to be paid to her by said master's report, to wit, the sum of $4000, with interest from June 12th 1858, and that defendant pay the costs of this suit, and of the bill of revivor therein; and it is further ordered and adjudged, that if said defendant, as administratrix of said John Hauptman, deceased, shall not have sufficient assets in hand, she shall make application to the Orphans' Court for this county, on or before the third Friday of January 1859, to sell or mortgage the real estate of said John Hauptman, deceased, or so much thereof as shall be necessary for the payment of the several amounts herein decreed to be paid."

From this decree, the present appeal was taken by the complainant below.

*Phillips*, for the appellant, cited Elliott *v.* Elliott, 5 *Binn.* 8 ; Stanley's Appeal, 8 *Barr* 431 ; Say's Executors *v.* Barnes, 4 *S. & R.* 114 ; McGunegal *v.* Mong, 5 *Barr* 272 ; Lukens's Appeal, 7 *W. & S.* 48 ; Neisly's Appeal, 8 *Barr* 457 ; Hemphill's Appeal, 6 *Harris* 307 ; Swartswalter's Account, 4 *Watts* 77 ; McCahan's Appeal, 7 *Barr* 59 ; Stehman's Appeal, 5 *Id.* 413 ; Drysdale's Appeal, 2 *Harris* 531 ; Dyott's Estate, 2 *W. & S.* 557 ; Tebbs *v.* Carpenter, 1 *Madd. Ch.* 290 ; Musser *v.* Oliver, 9 *Harris* 362 ;

[Berryhill's Administratrix's Appeal.]

Rosenberger's Appeal, 2 *Casey* 67 ; Witman's Appeal, 4 *Id.* 378 ; Hawkins's Appeal, 8 *Id.* 263 ; Schoch's Appeal, 9 *Id.* 351.

*Gilpin*, for the appellee.

The opinion of the court was delivered by

THOMPSON, J.—Catharine Berryhill, the decedent, in her lifetime, filed a bill in equity against the administratrix of John Hauptman, deceased, for an account, and to establish a trust, under the will of Jacob Hauptman, Sr., the father of the complainant. During the pendency of the suit, the complainant died, and, on a bill of revivor, the appellant, as her administratrix, was substituted as plaintiff.

An examiner was appointed to take testimony, and, after it was closed, the same gentleman was appointed master, to state an account between the parties, and to establish a trust in conformity with a precedent decree.

In the conclusion of the report of the master, he sets forth his finding to be, " 1st, That the breaking up of the mortgage investment by John Hauptman, the respondent's intestate, was wanton and uncalled for : 2d, that he never reinvested it in landed security as directed by the will : 3d, that his whole course showed oppression, high-handedness, bad faith, and a determination improperly to pervert his trust, and keep the principal : 4th, that the $4000 was exclusively trust-money, for Mrs. Berryhill and her issue : and 5th, that it came solely to John Hauptman's hands : wherefore, in settling the interest account, the master deems it his duty to charge the said John Hauptman with six per cent., or $240 per annum, interest on the $4000, from the 19th of May 1840, when the mortgage was paid off, to the 12th June 1858, when Mrs. Berryhill died ; to disallow travelling expenses, as unnecessary and oppressive ; to allow him no commissions, on account of his improper conduct (which is fully stated in the master's report) and abuse of his trust ; and to credit him only with payments actually made."

The interest account, on this basis, was $2052. On exception to the report of the master, the court struck out of this sum, $696, commissions, travelling expenses, and one per cent. interest disallowed by the master ; and with this deduction, decreed in favour of the plaintiff a balance of $5356, from which decree this appeal is taken.

The Common Pleas concluded the plaintiff's intestate by her receipts. In this we think they erred, in view of the facts found by the master in taking the account. As to the rate of interest paid, there was a gross fraud practised on Mrs. Berryhill, in the representation of the defendant's intestate, in representing that it was five instead of six per cent. in Pennsylvania. It needs no

[Berryhill's Administratrix's Appeal.]

argument to sustain a principle of honesty so clear, as, that a trustee cannot be permitted to set up a fraudulent acquittance, obtained by wilful misrepresentation from his *cestui que trust:* Witman & Geisinger's Appeal, 4 *Casey* 378; Schoch's Appeal, 9 *Casey* 351.

As to the item of travelling expenses, it stands on a different, but no better footing of morality than the interest. Everybody knows that it was not necessary for the trustee to make a journey each year to New York, to pay a small sum of money to the *cestui que trust.* She remonstrated against it, but to no purpose. And even when in Philadelphia herself, he would refuse to pay her what was due to her, but travelled to New York after her, and paid it there. Whether he was actuated by wantonness to diminish her income, or designed, by violence and abuse, to compel her to give a receipt in full, under the mistaken hope to bind her by it, it matters little, neither motive will entitle services impelled by it to respect, much less to compensation. Until faithlessness shall be as meritorious as its opposite, conduct like that of the trustee can not be compensated; and no receipt will foreclose an account to include such an item.

So with the commissions charged by him. Misconduct in a trustee is always followed by a loss of commissions, especially when it is wilful. And the master's report presents nothing else in this trustee towards his sister. Under the circumstances of the case, Mrs. Berryhill was not concluded by her annual receipts in full. They were procured from her by violence, abuse, and fraud, and equity will set them aside in favour of the *cestui que trust:* 4 *Watts* 77; 7 *Barr* 59; 5 *Id.* 413; 2 *Casey* 67; 12 *Vesey, Jr.* 363; 1 *Ball. & Beatty* 300, and authorities cited *supra.*

The amount stricken out of the report of the master must be reinstated, and so far the decree must be reversed.

> And now, to wit, March 24th 1860, this cause came on to be heard in this court at this term, on appeal from the decree of the Court of Common Pleas, in and for the city and county of Philadelphia, and was argued by counsel; whereupon it is considered, adjudged, and decreed, that the decree of the said court be reversed and set aside, and that the defendant pay to the said Catharine Ann Irwin, administratrix, &c., in full for arrears of interest, the sum of $2052 due to the said Catharine Berryhill at the time of her decease. And further, that the said defendant pay to the said Catharine Ann Irwin, in her own right, the sum of *four thousand dollars*, the amount awarded her in the master's report, with interest from June 12th 1858; and that the said defendant pay the costs of this suit, and of the bill of revivor therein, and of this appeal.