McCulloch *v.* Tomkins.

---

KATE McCULLOCH

*v.*

GEORGE TOMKINS.

[Filed June 14th, 1901.]

1. The burden of proof is upon an accounting trustee to show that he is entitled to the allowance for which he claims credit.

2. When a trustee, acting under a trust to collect and pay over or invest for the sole benefit of a *cestui que trust*, purchases land in his own

McCulloch *v.* Tomkins.

name and pays for it wholly with the trust funds, he will be decreed to convey to his *cestui que trust* the land so purchased, and, on stating the trust account, will be entitled to an allowance of credit for the amount of trust funds actually expended in the purchase.

3. Where such a trustee appropriates the trust funds to his own use, without identifying them, and purchases real estate therewith, all without the knowledge or consent of the *cestui que trust*, and, when called to account, sets up a false claim for greater allowances of credit than he is entitled to, he should not be allowed commissions for his services as trustee.

---

On bill, answer, exceptions to master's report and testimony.

The bill in this case is filed by the complainant against George Tomkins, alleging that, being in feeble health, she had placed herself under the defendant's treatment as a Christian Science healer. She alleges that he fraudulently procured from her a power of attorney to collect her moneys and invest the same as he should determine, without her knowledge of its contents and effect; that he obtained from her large sums of money, amounting, in the aggregate, to $4,030; that he purchased a house and lot, No. 426 Linden street, in the city of Camden, with her money, for $4,000, and took the title thereto in his own name, without any reference to the complainant as *cestui que trust;* that she is unable to get any satisfactory information from the defendant as to where and how her moneys were invested, and she prays an accounting and restraint upon the defendant from conveying or encumbering the house and lot No. 426 Linden street, Camden, purchased with her money, and for an accounting as to the investments made of her money in defendant's hands, and for a decree that he convey to her the Linden street property, and that he should return to her the residue of her moneys in his possession.

The defendant answers, claiming that the complainant placed herself under his care for the purpose of "pursuing a course in Christian Science for amelioration and restoration in health," and agreed to pay $5 a week therefor, and alleges an agreement on the complainant's part that the total sum thus due is $255. He denies any fraud, but admits that he received from the complainant certain claims due to her for collection. He claims that she proposed a compensation of twenty per cent. to be paid to

McCulloch *v.* Tomkins.

him for their collection. He alleges that he accepted this proposition, and has collected of the complainant's moneys $4,053.87, for which he claims a commission of $810.27. He denies that the power of attorney was not read to her, and alleges that it was made at her own solicitation. He denies that he purchased the Linden street house for $4,000, and alleges that he agreed to pay the mortgage thereon, to the amount of $2,900, and the further sum of $3,100 by direction of the complainant herself, and declares that he now holds the property for the complainant, subject to the mortgage debt. He denies that the complainant is not informed as to the investment of her money, and avers that she knows where the same is invested, and that it was done by her direction. He claims that he has paid for her, at various times, $354.45, and alleges that he has many times requested complainant to pay the balance due him and to accept a transfer of the said house and lot from him in full discharge of his trust.

Issue was joined, and the cause came to final hearing. At the opening of the cause defendant's counsel tendered a deed, conveying the Linden street property to the complainant for the named consideration of $6,000. In response to this tender the counsel for the defendant stated that the title in the Linden street property, as held by the defendant, represented an investment of but $1,100, with $2,900 of mortgage debt thereon. The vice-chancellor stated to the complainant's counsel that they might accept the tender or decline it, or hold it under advisement until an opportunity could be had to see whether the deed secured the rights of the complainant. Counsel for the defendant declared that they made the tender of the deed in compliance with the prayer of the bill asking for a conveyance of the property. The counsel for the complainant stated that they would hold the tender under advisement. The hearing then proceeded by the examination of the complainant and of the defendant. The testimony taken, with the answer of the defendant, showed that there was no dispute between the parties that the defendant had received $4,053.87 of the complainant's money; that he had repaid to her various sums, amounting to a sum more than three hundred dollars; that he had rendered to her certain services, as a Christian Science healer, for which, at the hearing, she said

McCulloch *v.* Tomkins.

she was willing to allow a credit of $255. The remaining matters were necessarily involved in any accounting made by the defendant of his disposition of the complainant's money. The principal items in dispute were the defendant's claim that he had expended $3,100 in cash of the complainant's money in the purchase of the Linden street house, in part payment of an agreed purchase-price of $6,000, and the defendant's claim of a commission of twenty per cent. for the collections which he had made 'for her. The stating of the account was then referred to a master and the further hearing of the cause was laid over until the coming in of the master's report. The master's report has now been filed. He reports that the purchase of the Linden street house was made by the defendant without the knowledge or consent of the complainant; that the cash payment was $1,100 and the agreement to pay a subsisting mortgage thereon for $2,900, making the sum of $4,000 the full consideration for that property, the title to which the defendant took in his own name. The master further reports that the complainant had, in writing, signified her consent to accept a conveyance of the said premises at the price of $4,000, allowing to the defendant a credit for the $1,100 of her money expended in the purchase. The master allows to the defendant the sum of $249.98 for various incidental expenses attending upon the Linden street property. He further reports that, although the defendant held the complainant's money as trustee for her, no part thereof has been invested by him, except the said sum of $1,100 expended in the purchase of the Linden street house; that there was no specific contract between the parties as to any commissions to be allowed to the defendant, but that the complainant had consented, in writing, to allow the defendant $100 for collecting and investing her moneys, and for that reason the master allowed the same.

Upon the coming in of the master's report the defendant filed exceptions—*first,* because the master exceeded his authority in inquiring as to the good faith of the defendant's investment of the complainant's money in the Linden street house; *second,* the complainant had given the defendant discretionary authority to invest the money, and if she accepted the property purchased by him as an execution of his trust, she was bound to accept it

with its burdens, or to refuse it; *third,* that the master had per-verted the testimony in reporting that the price to be paid for the Linden street property was but $4,000, including the mort-gage, when, in fact, the price was $6,000; *fourth,* that the master erred in excluding a $2,000 note, made by the defendant to Mrs. Baker, the grantor of the Linden street property, from allowance as part of the consideration of that property; *fifth,* that the master exceeded his authority by inquiring into the advantages of the investment of the complainant's money in the Linden street property; *sixth,* that there was no special contract shown between the complainant and the defendant as to the commis-sions to be allowed the defendant; that he should have the same commissions as are allowed by statute to a trustee; that the master erred in fixing the commissions at the sum of $100.

By the consent of counsel for both parties, the exceptions to the master's report and the final hearing of the cause were pre-sented together.

*Mr. William T. Boyle* and *Mr. Henry S. Scovel,* for the com-plaint.

*Mr. Timothy J. Middleton* and *Mr. Jonas Miller,* for the de-fendant.

GREY, V. C.

The controversy between the parties has been narrowed to the disputes touching the purchase of the Linden street property by the defendant, with the complainant's money, and the allowance of commissions to the defendant for collections made by him from her debtors. There are several formal questions raised by the exceptions, which may readily be disposed of. The first excep-tion denies the authority of the master to inquire into the good faith of the defendant's investment of complainant's money in the Linden street house. An examination of the order of refer-ence shows that the master was ordered to take an account of all the transactions between the complainant, as *cestui que trust,* and defendant, as trustee; that, for that purpose, the defendant should produce all documents in relation to investments made by

McCulloch v. Tomkins.

him on behalf of the complainant, and that the master should report what investments have been made by the defendant for complainant. The power thus given to the master was fully sufficient to justify his inquiry as to the good faith and truth of the investment made by the defendant of the complainant's money in the Linden street house. The first exception should be overruled.

The second, third, fourth and fifth exceptions deal with the investment of the complainant's money by the defendant in the purchase of the Linden street house, and may be considered together. The defendant purchased this house from a Mrs. Baker, a widow, with whom he presently boards, and he claims that he paid the sum of $3,100 in cash for this house, undertaking, also, the payment of a $2,900 mortgage already on the property, making the total purchase-money $6,000. The complainant's counsel contend that the actual payment made was but $1,100 cash, subject to the mortgage as stated, making the total purchase-price to be $4,000, of which only the sum of $1,100 paid in cash should be allowed to the defendant as a credit against the complainant. The defendant is admittedly acting in a fiduciary capacity, having received the complainant's money to be invested for her benefit. In the accounting he is asking an allowance for an expenditure of it made by him as trustee. The burden is upon him to show what was the actual expenditure made by him for which he claims a credit. The complainant appears, by all the testimony in the case, to have trusted the defendant with blind confidence. Her manner on the stand, as well as the testimony which she gave, indicated her unquestioning reliance upon his good faith and honesty. In the deed by which the defendant purchased the Linden street property he is himself named as grantee. There is no indication on the face of the deed that the complainant has any interest in the property. No memorandum in writing was given her to show that the defendant had invested her money in his own name. She says that, until after the purchase had been effected, she did not even know that it had been made. He swears that she was previously consulted and approved of it. Mrs. Baker, the grantor, testifies that the price to be paid was $3,100 in cash, subject to a mortgage of

$2,900. The deed itself was drawn by Mrs. Baker's lawyer, under her orders. It is expressed to be for the consideration of $4,000,

"subject, however, to the operation of a certain mortgage against the same for $2,900, given by the within grantee to Charles Rhoads and others, &c., * * * which said party of the second part hereby assumes and agrees to pay as part of the said consideration."

Mrs. Baker was unable to explain how the deed came to be drawn in this way. She swears that she gave no explicit directions to her counsel on this subject. Her lawyer who drew the deed was not called in behalf of the defendant to explain what instructions he received. The testimony of Mrs. Baker was given before the master. It is apparent, on its face, that she was desirous of making it as weighty as possible in favor of the defendant. She was quite unable to state in what way the $3,100 in cash was paid to her, although the transaction took place within a year last past. She failed, through her whole examination, to disclose a fact which, on cross-examination, was extorted from her, namely, that she held the defendant's note for $2,000, which she and the defendant claim represents a part of the cash price of the purchase-money of the Linden street house. The master evidently disbelieved the statements made by Mrs. Baker and by the defendant to the effect that a cash payment of $3,100 was made for the Linden street house, and that its purchase-price was agreed to be $6,000. The master's view of the testimony is sustained by a reading of it. The defendant has not carried the burden of proof to show that the purchase-money was $6,000, and that he paid $3,100 in cash on this transaction. The weight of the evidence indicates that the purchase-price was $4,000, and that only $1,100 in cash was paid.

It is proven that Mrs. Baker bought the property a year and a half before for $3,150. The testimony shows that she said, shortly before the making of the deed, that she expected to sell it for $4,000. The deed itself, drawn by Mrs. Baker's counsel, is expressed to be made upon the consideration of $4,000, part of which, $2,900, was the mortgage then on the premises. The internal revenue stamp on the deed conforms in amount to the stated consideration—$4,000.

McCulloch v. Tomkins.

The testimony of the defendant claiming that he had paid $3,100 in cash of the complainant's money on this purchase also appears to be uncandid and elusive. It is evidently given rather for its effect in supporting his claim, than as a frank exposition of the truth of the transaction.

A witness testifies that, about the time of the making of the deed to the defendant, he said that he had put $1,100 of his patient's money into the purchase.

I am unable to accept the testimony of the defendant and Mrs. Baker against the contemporaneous statements of the same parties, the setting forth of the consideration in the deed and the contradicting testimony of the other witnesses. The defendant admits that, although he took the title in his own name, he made the purchase with the complainant's money for her benefit. I am satisfied that he did this without her knowledge or direction. Under such circumstances, if she chooses to accept this investment of her money, she has a right to do so. Her acceptance is a release and discharge of her trustee to the extent that he had actually invested her money in the purchase. He has no right, by setting up a false claim that he invested a greater sum, to deprive her of the benefit of the purchase, upon allowing him what he actually paid. The second, third, fourth and fifth exceptions to the master's report should be overruled.

The sixth exception to the master's report objects that the master has fixed the commissions allowed to the defendant at the sum of $100, whereas the defendant insists he should have the same commissions as are allowed by law to a trustee. The claim for these commissions is made for the defendant's services in collecting a mortgage and some promissory notes due the complainant from her debtors living in the State of New York.

It may well be doubted whether a trustee who transfers the whole trust estate into his own name, without labeling it in any way, and then sets up a false defence, should be entitled to any commissions.

The defendant claims that he earned commissions by making collections for the complainant, by a combination of letter-writing and a making of "demonstrations." Of what a "demonstration" consists is not precisely defined by the defendant. It

was not, he says, the making of any journeys or the employing of lawyers to collect the debts, though he did correspond with some lawyers about the mortgage. He could not remember that he had paid them any fees. So far as the defendant's testimony explains what he calls a "demonstration," it appears to have consisted of a locking of himself in a room and devoting himself to the "thought" of collecting the debts due to the complainant. The defendant testified that the parties who owed the complainant were not in any way connected with the Christian Science Church. The influence which he exerted by "thought" in collecting the money for the complainant was therefore enforced against unbelievers in Christian Science. The moving of an absent unbeliever to pay his debts probably required from the defendant a more intense application of healing power, entitling him, from his point of view, to a higher compensation for his labors.

There is no other evidence than defendant's own testimony as to the complainant's agreement to pay him a twenty per cent. commission. The complainant denies this. The defendant's testimony is of no greater weight than complainant's, and, indeed, as it is given, is quite incredible. The master, it should be observed, has not reported that the defendant is entitled, because of his services, to any commission. The $100 is allowed, not because the defendant earned or deserved it, but because the complainant consented to give it to him. Save for this agreement of the complainant, no allowance of commissions would have been made to the defendant. The sixth exception to the master's report should be overruled. The master's report should be confirmed.

Upon the whole case, there should be a decree that the defendant convey the Linden street house to the complainant in fee-simple, for the consideration of $4,000; that an allowance of $1,100 be made to him for his cash expenditures in purchasing the same, as stated in the master's report; that the conveyance be subjected to the mortgage for $2,900 now on the premises, which mortgage the complainant, by accepting the deed, shall assume and agree to pay as part of the consideration of the said conveyance.

There should be a further decree in favor of the complainant and against the defendant for the sum of $2,425.14, with interest thereon from the 30th day of April, 1901, the date of the master's report in this cause.

I will advise such a decree, with costs of complainant to be taxed.