QUIRK v. QUIRK.

(Circuit Court, E. D. Pennsylvania. July 10, 1907.)

No. 44.

1. EQUITY—OBJECTIONS TO JURISDICTION—TIME FOR TAKING.
   In a suit in equity for an accounting by an agent, the objection that equity is without jurisdiction because of the adequacy of the remedy at law can only be interposed in the earlier stages, and will not be considered after the case is at issue and has been heard by a master.
   [Ed. Note.—For cases in point, see Cent. Dig. vol. 19, Equity, § 495.]

2. WORK AND LABOR—PARENT AND CHILD—SERVICES BY SON TO FATHER—IMPLIED PROMISE TO PAY.
   Services rendered by a son to his father in the collection of rents do not raise an implied promise on the part of the father to pay for them.
   [Ed. Note.—For cases in point, see Cent. Dig. vol. 37, Parent and Child, § 17.]

3. PRINCIPAL AND AGENT—RIGHT OF AGENT TO COMPENSATION—FORFEITURE BY MISCONDUCT.
   Where a son who was agent for his father to collect rents and deposit the same in bank to the father's credit kept no proper account of his collections, and did not deposit all of the money collected, but mixed a part with his own funds and converted the same to his own use, he thereby lost his right to any allowance for his services if otherwise entitled thereto.
   [Ed. Note.—For cases in point, see Cent. Dig. vol. 40, Principal and Agent, §§ 211, 212.]

4. SAME—ACCOUNTING BY AGENT.
   An agent on an accounting for money collected for his principal will not be allowed for disbursements claimed to have been made by him where he failed to keep proper accounts, and the testimony in support of his claim is vague and unsatisfactory.

5. GIFT—FORGIVENESS OF DEBT—EVIDENCE TO ESTABLISH.
   While a creditor may make a present to his debtor of the amount due him, nothing less than a delivery of the note or a receipt for the amount will support such gift.
   [Ed. Note.—For cases in point, see Cent. Dig. vol. 24, Gifts, §§ 95–99.]

In Equity. Final hearing on exceptions to master's report.

Maurice G. Belknap and E. Spencer Miller, for complainant.
Edgar W. Lank, for respondent.

J. B. McPHERSON, District Judge. I have read attentively all the evidence in this case, and have considered it in the light of the exceptions filed by the respective parties, but in my opinion none of the exceptions should be sustained. When it is remembered that the master saw and heard the witnesses, his valuation of their testimony should receive much respect, and, so far as I am able by reading the stenographer's notes to judge of the weight that should be given to what they have said, I agree fully with his estimate.

The exceptions are accordingly dismissed for the reasons given by the master, whose reports are adopted as the opinion of the court. A decree may be entered for the sum recommended in the supplemental

report. The master is directed to give the parties notice and make a recommendation on the subject of costs on or before July 25th.

The reports of the master (Henry B. Robb, Esq.) are as follows:

### Report of Master.

To the Honorable the Judges of Said Court:

The master appointed by your honorable court in the above proceeding to state an account begs leave to make the following report:

That in pursuance of his appointment, attached hereto, marked "Exhibit A," he served 10 days' notice upon counsel for plaintiff and defendant. That in pursuance of said notice a meeting was held at the office of Maurice G. Belknap, Esq., northeast corner Thirteenth and Chestnut streets, Philadelphia, May 18, 1904, at 3 p. m., and subsequent meetings were held from time to time, at which counsel for the plaintiff and defendant with their witnesses were present. After several meetings, at which testimony was taken, the plaintiff and defendant each filed with the master an account of the transactions between them, exceptions were filed to both the accounts, and subsequent meetings were held from time to time for the purpose of taking further testimony. Your master has carefully reviewed the testimony and the arguments of counsel, and respectfully submits his findings herewith.

The bill of complaint (Exhibit B) sets forth in the first three paragraphs that the plaintiff is a citizen of the state of Maryland, and the defendant a citizen of the state of Pennsylvania; that the plaintiff on the 15th of July, 1899, appointed the defendant his agent to collect his (plaintiff's) share of the personal estate of John Quirk, deceased; that on or about the 20th of November, 1900, plaintiff became the owner of premises 2041–43 Mt. Vernon street, in the city of Philadelphia, and authorized the defendant to collect the rents of the said houses, and that it was agreed that the moneys collected by the defendant should be deposited at the Union Trust Company in the name of the plaintiff; that the defendant received money from time to time to be so deposited, had charge of the deposit book, which he retained, together with all checks drawn against it by the plaintiff and returned to the defendant at the various settlements of the account with the bank.

The fourth paragraph sets forth that he loaned the defendant certain sums of money out of the said funds deposited at the Union Trust Company, and delivered to the defendant in September of 1902 $375 additional in cash for deposit to his credit in the said account.

In the fifth paragraph plaintiff alleges that he demanded an account, the surrender of the bank deposit book and the checks, which were refused by the defendant.

The sixth paragraph sets forth the execution of a bond and warrant of attorney in the sum of $6,500 by the plaintiff in favor of the defendant, alleging undue influence.

The seventh paragraph alleges that the amount involved in this suit is upward of $2,000, and that he has no adequate remedy at law.

The prayers of the bill are, first, that the defendant, John S. Quirk, be required to state an account of money received by him from the plaintiff or on his account, and of all rents and income from the property, and all taxes and repairs paid on account thereof, and pay the balance thereof to the plaintiff; second, that he be required to deliver up to the plaintiff the paid checks described in the bill; third, that the alleged bond and warrant of attorney be declared null and void and delivered up for cancellation; fourth, general relief.

The bill was amended by leave of court on the 8th day of March, 1905 (Exhibit C), by striking out all of the sixth paragraph and the third prayer thereof.

The answer of the defendant (Exhibit D) admits the facts set forth in the first three paragraphs of the bill as amended, admits the loan of $1,500 set forth in the fourth paragraph, but claims a set-off, denies the loan of $100 therein mentioned, and further denies that he is indebted to the plaintiff in any sum, and avers that the plaintiff is indebted to him in the sum of $8.75. The defendant further admits that he collected as rents $2,465.50, and

appends a statement of the same without the names of the persons from whom received. He admits the receipt of the several sums collected from the estate of John Quirk, deceased, claiming, however, that he deposited them in the plaintiff's account at the Union Trust Company. He denies the allegations in the sixth paragraph of the bill which becomes immaterial by the aforesaid amendment. Plaintiff filed a general replication (Exhibit D½).

At the argument counsel for defendant raised the question of jurisdiction, and based his argument upon the fact that the bill does not allege there is any money due from defendant to him, and that plaintiff has an adequate remedy at law. No formal motion was made at any time during the proceedings to dismiss the bill, but a great amount of testimony was taken on both sides, and formal accounts were filed by both parties.

Your master finds this to be a case for an accounting upon the authorities hereafter mentioned; that the defect in the bill, if there is one, may be cured by amendment since he finds a balance to be due plaintiff by defendant; and that this is a case where want of jurisdiction can only be interposed in the earlier stages of the proceeding after the bill is filed, and before the cause has been fully heard by the master.

In Bank of U. S. v. Biddle, 2 Parsons, Eq. Cas. (Pa.) 31, Parsons, J., at page 56, states one of the rules governing such cases to be:

"In cases arising ex contractu or quasi ex contractu, but involving accounts, courts of equity have exercised a general jurisdiction, among which arising from the cognizance of this court are agencies, claims against attorneys, consignees, receivers, and stewards. * * * In agencies of a simple nature, such as a single consignment, or the delivery of money to be laid out in the purchase of an estate, or in a cargo of goods to be paid over to a third person, although a suit at law may be maintainable, yet, if the thing lie in privity of contract and personal confidence the aid of a court of equity is often indispensable, it may be exceedingly convenient and effectual and prevent a multiplicity of suits—and the party in such case often has an election of remedy, 1 Story, 443."

A bill in equity was sustained against an agent for account in Persch v. Quiggle, 57 Pa. 247.

In Bradly v. Jennings, 201 Pa. 475, 51 Atl. 343, the court held that a bill would lie as against one of the defendants on the ground of agency.

In Fowle v. Lawrason, 5 Peters (U. S.) 503, 8 L. Ed. 204, Mr. Chief Justice Marshall says:

"In all cases in which an action of account would be the proper remedy at law, and in all cases where a trustee is a party, the jurisdiction of a court of equity is undoubted. It is the appropriate tribunal."

See, also, Mitchell v. Great Works, 2 Story, 648, Fed. Cas. No. 9,662.

In Kilborn v. Sunderland, 130 U. S. 505, 9 Sup. Ct. 594, 32 L. Ed. 1005, Mr. Chief Justice Fuller says:

" * * * Where it is competent for the court to grant the relief sought, and it has jurisdiction of the subject-matter, this objection should be taken at the earliest opportunity and before the defendants enter upon a full defense. * * * There cannot be real doubt that the remedy in equity, in cases of account, is generally more complete and adequate than it is or can be at law." 1 Story's Eq. Jur. § 450.

After the defense has been filed, it was held that the court is not obliged to entertain an objection to the jurisdiction, even though if taken in limine it might have been worthy of attention. Reynes v. Dumont, 130 U. S. 354, 9 Sup. Ct. 486, 32 L. Ed. 934.

Objection that the proceeding should have been begun on law side will not be entertained, unless made within a reasonable time after the bill is filed. Dorff v. Schminck, 197 Pa. 301, 47 Atl. 113; Shillito v. Shillito, 160 Pa. 167, 28 Atl. 637; Penna. v. Bogert, 209 Pa. 589, 59 Atl. 100.

In Mintz v. Brock, 193 Pa. 294, 44 Atl. 417, after answer filed and while the court below was hearing testimony in support of a prayer for preliminary injunction, it was agreed by the parties that the defendant should file an account within 30 days. After the accounts were filed and testimony taken for and against exceptions to the said account, the defendant moved to dismiss the bill, which was refused. The court said:

"The question of the defendant's liability to account, etc., as prayed for in the bill, is thus definitely settled by this decree to which both parties consented. * * * At the trial the burden of sustaining his account was on the defendant. The result was unsatisfactory to him, and he therefore took this appeal."

It was held the court was not in error in refusing to dismiss the bill.

Taking up the merits of the controversy: After several meetings at which testimony was taken, the parties each voluntarily filed accounts with your master.

The plaintiff's account (Exhibit E) shows a balance due him by the defendant in the sum of $3,371.79, to which exceptions (Exhibit F) were filed by defendant, and a counter account (Exhibit G) was then filed by the defendant, showing a balance due him by plaintiff in the sum of $236.33, to which exceptions (Exhibit H) were filed by plaintiff. The case was therefore reduced to one of accounts, and the subsequent testimony submitted by plaintiff and defendant was confined to the items of the said accounts, and the exceptions thereto. By the testimony subsequently taken, all of the items in both accounts to which exceptions were filed were satisfactorily proved by vouchers or admitted by counsel for the respective opposite parties, except as hereinafter set forth, and counsel for all parties conceded that the only questions (so far as the merits are concerned) to be considered are the following exceptions:

"(1) Plaintiff excepts (No. 1) because defendant failed to charge himself with the following item: '1901. Mar. 18. To cash one-half of two years and 2 mos. rent at $25 per mo. for premises 920 Fairmount Ave., $325.00.' This is the basis of defendant's first exception to plaintiff's account. .

"(2) Plaintiff excepts (No. 2) to each and all of the following items of credit in the rent account and asks that the same shall be proved (all of which were admitted and proved except): '1903. Dec. 5. By cash paid commissions on collections $3,089, $154.45.'

"(3) Plaintiff excepts (No. 4) to each and all of the following items of credit in the 'general account,' and asks that the same shall be proved (all of which were proved and admitted except): '(a) 1899. Apr. By moneys advanced by J. S. Quirk in the matter of contest of the will of John Quirk, deceased, $489.60. (b) 1902. Nov. 26. By gift from B. B. Quirk of balance due on accounts, $1,489.94.'"

Your master has carefully considered said exceptions, and his conclusions thereon are as follows:

1. Plaintiff excepts (No. 1) because defendant failed to charge himself with the following item: "To cash one half of two years and two months rent at $25 per mo. for premises No. 920 Fairmount Avenue $325.00"—and defendant excepts (No. 1) to plaintiff making such charge in his account.

Upon this point your master finds as a fact that there was not any express agreement by the defendant to pay the plaintiff any rent for premises No. 920 Fairmount avenue during the two years and two months they were occupied by him after the death of his grandfather, John Quirk.

He further finds that the evidence upon this point is vague and indefinite, and not sufficient to base a claim against the defendant for the use of the premises.

The only evidence upon this question was that given by Alfred Moore and the plaintiff, which was vague and indefinite. The sum of the testimony of Alfred Moore was that in the settlement between one John B. Quirk and Benjamin B. Quirk, plaintiff, in the division of the property of the estate of John Quirk, deceased, $325 was deducted by John B. Quirk from the sum due Benjamin B. Quirk, who was represented by John S. Quirk, the defendant. There was no evidence to show the terms of the whole settlement between John B. Quirk and John S. Quirk. The defendant, John S. Quirk, was the agent for the plaintiff, with full power to make the best settlement he could in the adjustment of the estate of John Quirk, deceased, the grandfather of the defendant, and in the discharge of his duty in this respect there never had been any complaint by the plaintiff. In fact, he has been well satisfied with the way the settlement of the estate was conducted by the defendant and his counsel. The evidence further shows that 920 Fairmount

avenue was originally owned by the grandfather and occupied by the grandson, John S. Quirk, the defendant, prior to his grandfather's death, and after his death until the settlement of his estate. No claim is made in the bill for this item. While we concede that the mere fact that no claim is made in the bill for this rent would not preclude the plaintiff from recovering it, the fact that the plaintiff omitted to claim this item in his bill, or by an amendment to charge fraud against the defendant in the settlement of the estate of John Quirk, deceased, raises a strong presumption against the claim of the plaintiff, and looks as if it were but an afterthought. The plaintiff himself says on pages 114, 115, 116, and 117 that he was not the owner of the property, and that the defendant occupied the premises under an arrangement with his grandfather during his lifetime in consideration of free board for a brother and sister of defendant, children of plaintiff, and he himself had no knowledge whether defendant paid John B. Quirk rent while he occupied the premises. John B. Quirk was not called. He surely must have been able to throw more light on the question than any of the witnesses who were called, and it would be unjust to the defendant to allow the plaintiff to recover upon such uncertain and vague evidence, especially when the absence of better testimony is not accounted for.

Your master finds that the exception (No. 1) of the plaintiff should be dismissed, and the first exception of the defendant be sustained.

2. Plaintiff excepts (No. 2) to the commission on collection $3,089.

Your master finds as a fact that the defendant was agent to collect rents for his father, and that he did not keep any books of account, that he mingled the moneys of the plaintiff with his own and did not deposit all of the moneys collected as rent in the Union Trust Company in accordance with the agreement between the parties, but converted part of the money to his own use, and, when called upon for an account, omitted items amounting to more than $600.

This credit is based upon a claim for commission of 5 per cent. of the amount of the rent which it is agreed by both parties was collected by the defendant. The plaintiff objects to this item on the ground, first, that the services having been rendered by a son to a father do not raise an implied promise to compensate in money; and, second, because he has forfeited his right to them by bad faith to his principal.

There was no special promise to pay the defendant for his services in collecting rents and taking care of the plaintiff's real estate, and this exception might be ruled upon the authority of Hertzog v. Hertzog, 29 Pa. 468, which holds that services performed for a parent by a son do not give rise to an implied promise to pay for them. The conduct of defendant, however, was such that, even though a promise to pay the defendant for his services were implied, the master is of the opinion that he has forfeited his right to commissions by bad faith to his principal. The reason is that defendant attached to his answer what purported to be an accounting of his rent collections from February 7, 1900, to December 5, 1903, wherein he shows the amount collected to be $2,465.50, which he states to be to the best of his knowledge, remembrance, information, and belief, but after the evidence was partly taken, and it was discovered that accounts must be filed and it was shown how much had been received by him, in his counter account he charged himself with rents collected in the sum of $3,089, being the identical sum charged against him in the account filed by the plaintiff, thereby showing a discrepancy of something over $600 which he had previously omitted. Although he agreed to collect the rent and deposit the money to the plaintiff's account in the Union Trust Company, defendant never kept any books showing the sums of money received as rent, and did not deposit the money regularly in the bank as he agreed to do, but mingled it with his own. He tried to shift the responsibility of keeping the books and depositing the money upon his sister Nellie, but her testimony is clear that she was simply his clerk, and he cannot charge to her his own misuse of trust moneys and negligence in not seeing that she kept books for more than two years.

In Berryhill's Adm'x's Appeal, 35 Pa. 245, it was held that misconduct in a trustee is always followed by a loss of commissions, especially when it is

willful. See, also, Clausers' Estate, 84 Pa. 51; Landis v. Scott, 32 Pa. 495; Milligan's Appeal, 97 Pa. 525.

Your master therefore finds that plaintiff's exception (No. 2) should be sustained and defendant surcharged with this item, to wit, $154.45.

3 (a). The plaintiff excepts (No. 4a) to credit of moneys advanced by John S. Quirk in the matter of the contest of the will of John Quirk, deceased, in the sum of $489.60.

Your master finds that the evidence offered in support of this payment is vague and uncertain; that credit is asked in defendant's account as if it were made in April of 1899, and the receipt produced is dated August 21, 1903; that it is impossible from the evidence to determine what, if any, sum was advanced by the defendant on account of the plaintiff in the will contest. He further finds that the defendant did not keep any account of such expenditures.

John S. Quirk, the defendant, was the attorney in fact for his father in the matter of the contract arising out of the will of John Quirk, deceased, and, as we have already said, the conduct of the defendant in connection with this matter was such as to win the approval of his father, and he was entitled to credit for any sum which was legitimately expended in connection with the contest. Under the will of John Quirk the plaintiff would have received an annuity of about $300 a year, but in consequence of the efforts of his son, the defendant, with counsel employed by him and paid out of the fund collected, plaintiff secured about $28,000 as his interest in his father's estate. The defendant claims that he paid one James O. Jones, who was out of the jurisdiction of the Pennsylvania courts, for his services in connection with the will contest the sum of $489.60. There are two or three important considerations to be borne in mind in connection with this claim: First, By the agreement between the parties all moneys received by John S. Quirk, the defendant, were to be deposited in the plaintiff's account in the Union Trust Company, where they could have been drawn upon only by the plaintiff himself or by a check drawn by some one as his authorized agent. It does not appear from the testimony whether the defendant used the money collected from rents to pay Jones or drew it from bank as required, but your master is led to infer that he appropriated it from moneys in hand, instead of depositing the money in bank, as he had agreed. The difficulty which faces the defendant, therefore, is not his right to collect the necessary expenses in the will contest, but whether he has such vouchers which will entitle him to recover the sum he claims. Herein his case is weak. The master has no doubt that he was put to some expense to obtain the testimony of the witness, Jones, but the testimony both of the defendant and Jones is so vague and uncertain that it is impossible to determine what sum, if any, should be allowed him. In the defendant's answer (Exhibit D) he asks credit for "1899. April. By moneys advanced to B. B. Quirk in the matter of the contest of the will of John Quirk, deceased, $489.60."

In his counter account he sets forth the same item. In the testimony taken January 11, 1906, he produced a receipt as follows:

"Gainsville, Florida, August 21st, 1903.

"Received of John S. Quirk from time to time by my wife and me four hundred and eighty-nine dollars to reimburse me for services in late John Quirk's will case, $489.60.          James O. Jones."

The only testimony of defendant as to the payment of this sum was that he paid some in cash and some in checks, but no checks for any of this sum were ever produced by defendant, nor were any dates given when payments were made other than said receipt.

James O. Jones, to whom this money is alleged to have been paid, was called by defendant to testify. He said: "The receipt was given for money he [defendant] had loaned me and advanced me in the case of his grandfather's will in his father's interest, but he could not give the items. He said he had them once, but destroyed them." Jones was simply a witness in the will contest, and lived part of the time in St. Mary's county, Md., and part of the time in Florida. His business in Maryland was wharf agent, and he made about five trips to Philadelphia. The receipt was not given as

the money was advanced; but about two years after the last payment was made the defendant wrote to Jones in Florida asking him for a receipt for the money advanced him, and he sent the above-mentioned receipt.

It seems strange that this claim should not have been settled at the time the money was collected from the estate of John Quirk, deceased, because, if it were bona fide, there was plenty of money in hand to pay it. The master is of the opinion that no reliance whatever should be placed on the testimony of James O. Jones, who had previously pleaded guilty to a charge of forgery in the District Court of the United States for the District of Maryland on the 4th of October, 1901 (Exhibit J). It was incumbent upon the defendant to keep accurate accounts of such of his expenditures as he desired should be paid by his father.

"Since a trustee is chargeable with all he has received in order to be given credit in his accounts, he must show by affirmative proof what he has expended, and he must sustain the burden of proving that his disbursements are proper. A trustee is bound to keep clear and accurate accounts, and whatever doubts and obscurities appear will be construed against him." 28 Am. & Eng. Ency. p. 1095; McCullough v. Tomkins, 62 N. J. Eq. 262, 49 Atl. 474; Welsh v. Brown, 50 N. J. Eq. 387, 26 Atl. 568; White v. Rankin, 18 App. Div. (N. Y.) 293, 46 N. Y. Supp. 228, affirmed 162 N. Y. 622, 57 N. E. 1128. Section 332: "Thus, for example, it is ordinarily the duty of agents to keep regular accounts and vouchers of the business in the course of their agency; and, if this duty is not faithfully performed, the omission will always be construed unfavorably to the rights of the agent, and care will be taken that the principal shall not suffer thereby. Indeed, cases may occur of such gross neglect and misconduct of agents in this respect as to amount to a complete forfeiture of all compensation which would otherwise belong to the agency." Story on Agency, § 332.

Your master, therefore, finds that the plaintiff's exception (No. 4a) should be sustained, and defendant be surcharged with the amount of the said item $489.60.

(b) The plaintiff's next exception (No. 4b) is to the following item:

"1902. Nov. 26. By gift of B. B. Quirk of the balance due on account, $1,489.94."

Your master finds that the plaintiff did not make a gift to the defendant of the sum of $1,500, or the balance due on account, $1,489.94; that the plaintiff did not return to the defendant any note or any other paper releasing the defendant from any debt which he owed him November 26, 1902; and that the plaintiff and defendant did not strike a balance of their accounts on the said 26th of November, 1902.

The defendant asks this credit, claiming that on November 26, 1902, plaintiff gave the defendant the balance due on their general account amounting to $1,489.94. A significant fact in connection with this claim is that nowhere in the answer of John S. Quirk, the defendant, is any credit taken for this gift of about $1,500. The first intimation is in the counter account filed some time after the suit was brought.

Defendant testified: That Thanksgiving Eve, 1902, he (plaintiff) said to defendant that he had given his (defendant's) brother George a farm valued at $9,000 and $3,000 worth of stock and his sister a farm, and that the difference between him (plaintiff) and defendant, which was $1,500, he would make a gift to defendant. This was in the presence of his (defendant's) wife and Mr. and Mrs. Heilman. That he had given his father a note for $1,500, but he did not know whether he (the father) destroyed it afterwards or not. Mrs. Heilman testified that she heard plaintiff say that what he (defendant) owed him he was welcome to it, the $1,500, but she did not say what $1,500 was meant. Laura J. Quirk (defendant's wife) and Joseph F. Heilman corroborated Mrs. Heilman, and neither of them knew anything about a note.

The testimony for plaintiff was that Emma did not get a farm and George did not get a farm until November, 1903, a whole year later, and then all he got was a loan of $415 toward the purchase of it. The plaintiff denies making the gift, as well as the whole incident related as happening on Thanksgiving Eve, 1902, except that he was present at defendant's home. From the accounts as submitted by the defendant, your master is of the opinion that on

Thanksgiving of 1902 neither the plaintiff nor the defendant knew how the accounts between them stood, and, as said above, it is remarkable that, if the gift had been made as claimed, the defendant should not have asked for the allowance in the account attached to his answer. The defendant in his answer admits that on the 15th of September, 1899, the plaintiff loaned him $1,500 and says to secure the payment of which he gave plaintiff his promissory note in the sum of $1,500, it being expressly understood between himself and plaintiff when said note was given that said note was to be paid by him at his convenience, but nowhere in his answer claims credit for it as a gift. The exception might be sustained on what has been said, but a more serious obstacle confronts the defendant in the form of a question of law. The acts of the plaintiff as testified to by the defendant were not sufficient in law to make a gift by him of the amount due. It is well settled that, while a creditor may make a present of the debt to his debtor, yet nothing less than a delivery of the note or a receipt as the case may be is sufficient to support the gift.

In 14 Am. & Eng. Ency. of Law (2d Ed.) p. 1031, the principle is stated as follows:

"A debt due from the donee to the donor may be the subject of a gift to the same extent as a debt due from a stranger. Such a gift when fully consummated by the destruction or surrender of the evidence of the debtor, the giving of a receipt will operate as an extinguishment of the debt, and a subsequent promise by the debtor to pay the debt is not enforceable for want of consideration.

"As in the case of other gifts, the intention of the donor to make the gift must be fully accomplished by a delivery, either by surrendering to the donee the evidence of the debt or by giving him a receipt for the amount."

2 Schouler's Personal Property says:

"Section 97. A gift transaction is sometimes sustained on the ground of the forgiveness or discharge of a debt. Here the surrender of the note, or other evidence of the debt, or, if there had been no such writing, some instrument of discharge, or in general a receipt in full from the creditor, would seem to be the usual and proper means of evincing the act of donation. Indeed, the rule has long been that no merely oral declaration will transform a debt into a gift." In Re Campbell's Est., 7 Pa. 101, 47 Am. Dec. 503, (1847) Gibson, C. J., says:

"The notes in question could have been discharged only by a sealed release or by a parol gift of them. The disposition insisted on by the accountant was neither [here holder of notes directed that they be burned or given to debtor]. A gift is a contract executed; and, as the act of execution is delivery of possession, it is of the essence of the title. * * * The gift of a bond, note or any other chattel therefore cannot be made by words 'in future' or by words 'in præsenti' unaccompanied by such delivery of the possession as makes the disposal of the thing irrevocable. * * * Nothing discharges it while it remains in the creditor's possession and power." Appeal of John Horner, 2 Penny. (Pa.) 289; Kidder v. Kidder, 33 Pa. 268, Fassett's Appeal, 167 Pa. 448, 31 Atl. 686.

"Where a father loaned money to his son and afterwards refused to take security, saying that the interest would be at a certain rate if he should want it, and that his decease would be the end of the transaction, there was no gift of the debt." Doty v. Wilson, 5 Lans. (N. Y.) 7.

"The declarations of a deceased lessor that she intended to release the lessee from liability for rent do not of themselves amount to a release, as a gift of a debt owing from the donee can be made effective only by the delivery to the donee of a receipt or some instrument equivalent to it." In re Gregg's Estate, 32 N. Y. Supp. 1103, 11 Misc. Rep. 153.

And, if the words used by defendant in his testimony are noted carefully, it will be seen that they do not necessarily express more than the expectation and promise to forgive the debt.

Your master therefore finds that the plaintiff's exception to the said item should be sustained, and the defendant be surcharged with the amount thereof, viz., $1,489.94.

Plaintiff's counsel submitted formal requests for findings of fact and law attached hereto, marked "Exhibit K," which the master has deemed unnecessary to specifically pass upon, in view of the foregoing findings upon the several matters herein.

Your master has stated the account between the plaintiff and defendant in accordance with his findings, and attached the same hereto, marked "Exhibit L," which shows a balance due to plaintiff by the defendant in the sum of $1,897.66, and submits the following form of decree, to wit:

Decree.

And now this ——— day of ———, in consideration of the within report, it is hereby ordered and decreed that the said defendant John S Quirk pay to the plaintiff Benjamin B. Quirk the sum of $1,897.66, the sum found to be due said plaintiff herein.

Supplemental Report of Master.

To the Honorable the Judges of the Said Court:

Your master having given notice to counsel for all parties that he would file his report on the 27th day of October, 1906, exceptions were filed, on behalf of the plaintiff hereto attached, marked "Exhibit M," and on behalf of the defendant hereto attached marked "Exhibit O." Your master has carefully reviewed the testimony and law raised by the said exceptions and begs to report as follows:

Referring to defendant's Exception X ·

"Because the learned master erred in overruling defendant's objection to testimony of Emma Quirk and George Quirk. Pages 85–94, testimony."

Your master is of the opinion that the testimony of these witnesses was admissible, although he was not influenced by their testimony in reaching his conclusions of fact and law as stated in his report. This exception is therefore dismissed.

Referring to defendant's Exception XIV:

"Because the learned master erred in not giving defendant a credit of fifty-two dollars and sixty-two cents ($52.62) in account stated by the master," etc.

This item was not in the account of either plaintiff or defendant, and was overlooked by the master in stating his account. It was proved by a voucher, and a credit should have been allowed the defendant for the said sum. This exception is therefore sustained, and an additional credit is allowed to the defendant of the said sum of fifty-two dollars and sixty-two cents ($52.62), thereby reducing the amount due to the plaintiff by the defendant to the sum of eighteen hundred and forty-five dollars and four cents ($1.845.04).

Your master has carefully considered the remaining exceptions of the defendant and the exceptions of the plaintiff, and is unable to discover any reason why he should disturb his former findings, and accordingly he dismisses all of the said exceptions for the reasons stated in his original report. He therefore recommends that the form of decree contained in his original report be amended by substituting the sum of eighteen hundred and forty-five dollars and four cents ($1,845.04) in place of the sum therein mentioned, which is the sum now found to be due the said plaintiff by the defendant in this suit.